Henry Silverman, J.
This' is an action instituted by Isbrandtsen Co., Inc., against Lyncroft Grain Corporation to recover alleged damages sustained by reason of the defendant’s failure to deliver 1,500 tons of grain to be shipped on the plaintiff’s vessel “ M. V. Heelsum,” pursuant to a freight engagement contract dated January 8, 1952. Lyncroft denies that it breached the contract and contends that it was the plaintiff which breached it. Lyncroft has interposed a counterclaim for its alleged damages and by a third-party complaint, it has brought into this action as a third-party defendant, Mack Klosty & Company, the broker who negotiated the contract on its behalf. Therein it seeks to recover the amount of any judgment which might be obtained against it by Isbrandtsen and for the alleged damages it sustained. The action against the broker is bottomed upon Lyncroft’s contention that the broker failed to procure a contract pursuant to instructions. Klosty, the broker, has interposed a counterclaim against Lyncroft for the amount of the commission it claims it would have received from Isbrandtsen if Lyncroft had not breached the contract.
The testimony shows that in December of 1951 Lyncroft requested Klosty to secure shipping space for 1,500 tons of grain to be shipped from Houston, Texas, to Antwerp, Belgium, and stated that a February, 1952 bill of lading was required. Klosty made efforts to secure such a contract but was unable to secure a guaranteed February shipment and so informed *523 Lyncroft. Klosty advised Lyncroft that Isbrandtsen had a ship, the M. V. Ootmarsum, which was then expected to arrive at Houston about February 27, 1952, based upon the then existing position reports of said vessel, but that Isbrandtsen would not guarantee February bill of lading. Klosty was then authorized by Lyncroft to engage space on the “ Ootmarsum ” for the shipment of 1,500 tons of grain from Houston to Antwerp. On January 2, 1952, Klosty prepared such an engagement note which was accepted by Isbrandtsen and a copy was forwarded to Lyncroft. Lyncroft made no objection to the provisions of the contract. On or about January 8, 1952, when it became apparent to Isbrandtsen that the “ Ootmarsum ” was running late, Isbrandtsen communicated with Klosty and exercised its right to substitute a different vessel, and it substituted the “ M. V. Heelsum,” which they indicated to Klosty was expected ready at Houston between February 24 and February 29. Klosty then prepared a new freight engagement note, dated January 8, 1952, which Isbrandtsen accepted and a copy thereof was forwarded to Lyncroft, to which it made no objection.
The pertinent provisions of the contract are as follows: Opposite “ Shipment Date ” is typewritten “ Steamer expected ready Houston about February 24/29, 1952.” The contract further provided for shipment of 1,50® tons of heavy grain in bulk at a freight rate of $15.50 per ton from Houston, Texas to Antwerp, Belgium. It also provided as follows: “ Brokerage payable to Mack Klosty & Company — 2%%.”
The Heelsum arrived at Houston on March 2, 1952. The space in the vessel for the carriage of the grain was tendered to Lyncroft on March 5, 1952. The tender was not accepted. Lyncroft claimed late tender. Isbrandtsen claimed timely tender. This is the real issue in the action. The court is fgilly convinced by the testimony adduced at the trial that all of the parties to the transaction were thoroughly conversant with the grain trade and freight engagement contracts for shipment of grain overseas and that they are chargeable with knowledge of the custom of the port of Houston with reference to such contracts. The contract provided “ Steamer expected ready Houston about February 24/29, 1952.” It is for the court to determine what was meant by the use of the words “ expected ” and ‘ ‘ about ’ ’ under all of the circumstances of this transaction.
The evidence shows that when a freight engagement contract contains the word “ about ” in defining the position of a vessel at the port of Houston, the custom prevailing permits the carrier to tender the vessel no later than five days after the *524 date set forth in the contract. In his deposition taken on interrogatories and cross-interrogatories, Mr. J. H. Michels, Jr., an experienced booker of space at gulf ports, testified that the custom of the ports of Galveston and Houston are embodied in the “ Joint Rules of the Galveston and Houston Maritime Associations.” Section 12 (h) of said rules states: “ The word ‘ about ’ when used in defining the position of a vessel in these ports shall be understood to mean a period of time not exceeding five days.” It must also be borne in mind that the contract provided “ steamer expected.” This is not a warranty or guarantee but merely a representation of a belief or expectation. In Petroleum Export Corp. v. Kerr S. S. Co. (32 F. 2d 969, 970-971), the court in discussing the word “ expected ” in a damage action for breach of a freight engagement contract, stated “ The language of the contract is ‘ expected time of loading, ’ and the expected does not always happen. Webster defines ‘ to expect ’ as, to look forward to as certain or probable. A definite statement as to the time of loading would amount to a warranty, while the expected time of loading amounts to nothing more than a representation * * * the agreement that the vessel was expected to arrive in the port of Los Angeles on a certain date was not the equivalent of an agreement that she would in fact arrive on that date ” (see, also, Jackson & Co. v. Seas Shipping Co., 185 Misc. 94, affd. 270 App. Div. 830, affd. 296 N. Y. 529; Eitingon-Schild Co. v. Friedman, 213 App. Div. 663).
After weighing all of the evidence and the exhibits with particular regard to the circumstances surrounding the execution of the contract and having given due consideration to the applicability of the custom of the port and the Joint Rules of the Galveston and Houston Maritime Associations, I have concluded that when Isbrandtsen tendered the vessel on March 5, 1952, it made a proper and timely tender; that when Lyncroft failed to accept the tender and failed to deliver the grain for shipment, it breached the contract. Adding five days to February 29, 1952, as the time limit within which Isbrandtsen could make tender of the space is not a contradiction or a variation of the Avritten contract but results from an explanation of the terms “ expected ” and “about” under the circumstances of this case. Parol evidence Avas admitted for this purpose under the principle set forth in Horby Realty Corp. v. Yarmouth Land Corp. (270 App. Div. 696, 697): “ Parol evidence is admissible to explain the meaning which custom or usage has given to words or terms as used in any particular trade or business or in any particular locality. [Citing cases] ”.
*525 In order to mitigate the damages, Isbrandtsen secured a substitute cargo of grain at a freight rate of $13.50 per ton, which was the best rate obtainable under the circumstances, as a result of which it lost $2 per ton. On the trial, it also claimed demurrage charges as damages, but I find that the “ Heelsum ” sailed from the port of Houston on March 7, 1952, and that its departure was not delayed by the failure of Lyncroft to deliver the grain after tender on March 5, 1952. In any event, under the custom of the port of Houston, Lyncroft would have had until March 7, 1952, to comply with the tender. By concession of the parties, it was conceded that Isbrandtsen expended the sum of $50 for telegrams and incidental expenses in securing the substitute cargo. Isbrandtsen is entitled to this amount as additional damages. Isbrandtsen also makes claim for the sum of $96.52 for “ dead time ” labor charges. The court finds that this item of damage has not been proven sufficiently.
At the trial, Lyncroft contended that Isbrandtsen was not the proper party plaintiff since it did not own or operate the vessel “Heelsum It should be borne in mind that the contract was made by Isbrandtsen in its own name and all dealings were had with it. I find that Isbrandtsen is a proper party plaintiff (Civ. Prac. Act, § 210; Watts v. Phillips-Jones Corp., 211 App. Div. 523, affd. 242 N. Y. 557). Another defense raised by Lyn-croft was based upon a claim of deviation. In my opinion that question does not arise in this action since I have found that the tender was timely made. Lyncroft also contended that since the substitute cargo was actually 2,100 tons at $13.50 per ton, Isbrandtsen was not damaged because its freight revenue was more in amount than it would have received for 1,500 tons at $15.50 per ton. This contention is without merit as it overlooks the fact that the substitute cargo required more space.
There remains for consideration the disposition of the third-party complaint by Lyncroft against Klosty and the counterclaim interposed by the latter. With respect to the claim of Lyncroft against Klosty, I find no basis for such a claim. Klosty, as broker, secured for Lyncroft a contract which was accepted by it and I find further that Klosty never agreed to procure a contract which guaranteed a February bill of lading. Likewise, I find no merit to the counterclaim interposed by Klosty for commissions. The evidence shows that brokerage was payable by Isbrandtsen and that Lyncroft never agreed to pay it and no evidence was presented which would subject Lyncroft to liability for such payment.
*526 Findings of fact and conclusions of law were waived and the foregoing constitutes the decision of the court and the disposition of all motions made at the trial upon which decision was reserved.
Judgment is directed to be entered in favor of the plaintiff, Isbrandtsen Company, Inc., against the defendant, Lyncroft Grain Corporation, for the sum of $3,050, with appropriate interest; the counterclaim of the defendant Lyncroft Grain Corporation is dismissed; the third-party action by Lyncroft Grain Corporation against Mack Klosty & Company is dismissed; the counterclaim of Mack Klosty & Company against Lyncroft Grain Corporation is dismissed. Thirty days’ stay and 60 days to make a case.