**C. RAYMOND DAVIS & SONS, INC.**

v.

**LIBERTY MUTUAL INSURANCE COMPANY.**

Civ. A. No. 77–1525.

United States District Court,
E. D. Pennsylvania.

Jan. 16, 1979.

David E. Thomas, Philadelphia, Pa., for plaintiff.

Benjamin Zuckerman, Norristown, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This is a suit on a Comprehensive General Liability Policy and an Umbrella Excess Liability Policy brought by the plaintiff insured against the defendant insurer for damages allegedly caused by the insurer's failure to defend and pay claims made by a third party against the insured. Jurisdiction of this Court is based on diversity of citizenship. 28 U.S.C. § 1332(a).

The Court has before it cross-motions for summary judgment on the issue of liability.

For the reasons set forth below, partial summary judgment is granted in favor of the plaintiff insured, and partial summary judgment is granted in favor of the defendant insurer.

The plaintiff C. Raymond Davis & Sons, Inc. (Davis) is a building contractor. In 1969, the Company constructed a building for National Label Company in Montgomery County, Pennsylvania. Davis built the structure on a sanitary landfill, following plans prepared by an independent architect. After completion of construction, the land under the building began to settle, and the floor and walls began to crack, sink and tilt. National Label, the owner of the building, brought a claim against Davis for damage to the building, and for other consequential damages, including damage to certain of National Label's printing machines, which required an absolutely level floor to operate properly. Relying on the Defense Clause in the insurance policy, Davis called upon Liberty Mutual to defend the claim. Liberty Mutual refused. National Label obtained an arbitrator's award against Davis for $50,000. and the award was elevated to judgment in the Court of Common Pleas of the Commonwealth of Pennsylvania.

## DUTY TO DEFEND

The duty to defend provision of a liability insurance contract is an agreement by which the insurer, in consideration of the premium paid by the insured, assumes the obligation to arrange for and pay the expenses of the defense of certain lawsuits brought against the insured. In the policy at issue, the defense clause was written as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. Bodily injury or
Coverage B. Property damage

to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property

damage, even if any of the allegations of the suit are groundless false or fraudulent . . ."

A plausible reading of the clause is that the duty to defend and the duty to indemnify are co-extensive. The insurer agrees to defend suits alleging *such* bodily injury or property damage; "such" apparently refers to bodily injury or property damage "to which this policy applies."

Courts, however, have not read duty to defend clauses narrowly. The duty to defend has been held to be broader than the duty to indemnify. *Gedeon v. State Farm Mutual Automobile Insurance Co.*, 410 Pa. 55, 58–9, 188 A.2d 320 (1963).

 Where the allegations of the complaint against the insured state on their face a claim against the insured to which the policy *potentially* applies, the insurer must defend the claim. *Id.; Zeitz v. Zurich General Accident and Liability Insurance Co.*, 165 Pa.Super. 295, 67 A.2d 742 (1949). The insurer is obliged to defend the entire claim if some of the allegations in the complaint fall within the terms of coverage and others do not. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959).

Davis relies principally on Paragraphs 34 and 38 of National Label's complaint to show that Liberty Mutual had a duty to defend the claim:

"34. Plaintiff avers that said new office and plant facility as constructed by contractor is subject to excessive differential settlement, its floors are cracked and sink and tilt, its walls are cracked, doors bend, and plaintiff's machinery is becoming displaced; and in addition, dangerous gases which endanger property and life have accumulated under and leak into said plant.

· · · · ·

38. Because of defendant's breaches aforesaid, plaintiff has sustained damages in the amount of $36,933.43, and in addition, will sustain losses in the amount of $1,088,000.00."

These paragraphs allege property damage caused by the insured, and fall squarely within Coverage B, quoted above.[1]

 The insurer is not required to defend the claim when it is apparent from the face of the complaint that none of the injuries that are alleged fall within the coverage of the policy. However, if coverage (indemnification) depends upon the existence or non-existence of facts outside of the complaint that have yet to be determined, the insurer must provide a defense until such time as those facts are determined, and the claim is narrowed to one patently outside of coverage. *Lee v. Aetna Casualty and Surety Co.*, 81 F.Supp. 1008 (S.D.N.Y.1949), *aff'd*, 178 F.2d 750 (2nd Cir. 1949) (L. Hand, J.).

 In the instant case the duty to indemnify is still in doubt; it depends on the existence or non-existence of as yet undetermined facts (see *infra*). Thus, Liberty Mutual breached its contractual duty to defend when it refused to provide a defense. to National Label's property damage claim against the insured.

 The amount of recovery to which the insured is entitled for breach of the duty to defend is the cost of hiring substitute counsel and other costs of the defense. *Gedeon v. State Farm Mutual Automobile*

1. Liberty Mutual has argued that all of the allegations of the complaint patently fall outside of the coverage of the policy, which excludes "property damage to the named insured's work". As will be developed more fully, *infra*, Liberty Mutual does not have a duty to indemnify Davis for any recovery against Davis for damage to the building itself. However, Liberty Mutual may have a duty to indemnify for consequential damages. Paragraph 34 does not plead consequential damages with much specificity, but this Court cannot read an allegation of machinery becoming "displaced" as anything other than a statement that National Label was damaged in some way because of that displacement. Consequential damages fall within the coverage provisions of the policy, and the insurer must defend such claims. Cf. *Pittsburgh Bridge and Iron Works v. Liberty Mutual Insurance Co.*, 444 F.2d 1286, 1288 (3rd Cir. 1971).

*Insurance Co., supra,* 410 Pa. at 60, 188 A.2d 320.[2]

### ` DUTY TO INDEMNIFY

The policy in issue sets forth a general duty to indemnify: "the company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this policy applies, caused by an occurrence . . . .".

"Occurrence" is defined elsewhere in the policy:

"'Occurrence' means an accident, including injurious exposure to conditions which results, during the policy period in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*" (emphasis supplied).

The central factual issue to be resolved is whether the insured "expected" the property damage that occurred.[3]

■ If possible, the words in an insurance policy are to be given their common, ordinary meaning. *Easton v. Washington County Insurance Co.,* 391 Pa. 28, 137 A.2d 332 (1958). Webster's Third New International Dictionary, 1971, defines "expect" as follows (after listing obsolete, archaic and colloquial uses):

3a. to look for, specifically to anticipate the coming of.

3b. to look forward to, specifically to anticipate the occurrence of.

4a. to consider probable or certain.[4]

■ Language in an insurance policy is ambiguous if it is reasonably susceptible of at least two different interpretations. *Celley v. Mutual Benefit Health and Accident Association,* 229 Pa.Super. 475, 324 A.2d 430 (1974). Here, there can be little doubt that reasonable minds could differ about the precise meaning of "expected".

■ Where language in an insurance policy is ambiguous, the ambiguity must be resolved in favor of the insured. *Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 326 A.2d 346 (1974). Resolving the ambiguity in favor of the insured, the Court finds that "expected", in this insurance policy, means "considered more likely than not to occur"; and that coverage exists for property damage which the insured did *not* consider more likely than not to occur.

Liberty Mutual obviously excluded coverage of intentional and expected "occurrences" because such occurrences are not actuarially random. Intentional harm is entirely under the control of the insured; "expected" harm is far more likely to occur than is the "feared" harm (risk) with which normal actuarial calculations are designed to deal.

Davis bought the policy because of the risks of property damage and personal injury that its business entails. "Risk", however, encompasses a spectrum of likelihoods—the likelihood of loss may be very high or very remote. Davis, in the exercise of its business judgment, is consistently faced with choices involving risks. Some construction practices undoubtedly involve more risk of loss than others, and Davis must make business judgments about which methods to use.

Neither the insurance contract nor the law requires Davis to worry about Liberty Mutual's actuarial projections, and to use every means available to it to minimize risk. If building over a sanitary landfill is a justifiable business practice (and Liberty Mutual has not suggested that it is not), it is up to Liberty Mutual to adjust for any

---

2. The insured has alleged that its defense costs were $80,346.47. As the plaintiff itself points out, the Court cannot award that sum at this stage of the case. Determination of damages will be made at trial.

3. · Neither party argues that the other elements making up an "occurrence" are not present.

4. The Court has found no Pennsylvania cases which provide a definition of "expect" or "expected". Definitions in case law from other states are similar to definition 4a quoted above. See, e. g., *Western National Gas Co. v. Cities Service Gas Co.,* 223 A.2d 379, 383 (Del.1966); *Isbrandtsen Co. v. Lyncroft Grain Corp.,* 8 Misc.2d 521, 166 N.Y.S.2d 721, 725, (Sup.Ct. 1957).

increased risk by adjusting its premiums or the policy language to account for such construction.

Where property damage is *more likely than not*—i. e., expected—Liberty Mutual is protected by the terms of the policy. But if the Court were to construe "expected" as meaning "foreseen as being possible", the contractor would virtually never be sure of the coverage of his policy, since there is always some risk, known in advance, that any construction practice will cause damage. Courts would be faced with deciding whether, for example, a five percent risk of harm, known in advance, is merely feared, while a ten percent risk of harm is expected. Admittedly, there is a large gray area between a small risk of harm and harm that is more likely than not, but if Liberty Mutual wishes to be protected actuarially in that area it must adjust its language or its premiums accordingly.

 The Court has carefully reviewed the pleadings and the record evidence before it and must conclude, reluctantly, that there is an issue of fact as to whether C. Raymond Davis & Sons thought that the "occurrence" in issue was more likely than not. It is difficult to imagine that a contractor would build a building that he considered likely to be damaged by its own foundation, but the circumstances of this case at least present that possibility. Davis took steps to make sure that the architect would be responsible for any damage that resulted from building over a landfill. It is conceivable that Davis considered at least *some* property damage to be likely, but hoped that the loss would be small and payable by the architect. The parties have not presented affidavits bearing directly on the question. Hence, summary judgment on the issue of whether Davis expected property damage would not be proper at this point.

 Liberty Mutual is entitled to partial summary judgment to the effect that it is not responsible for any property damage to the building itself. Exclusion B of the policy unambiguously excludes "property damage to any of the named insured's work, whether the work has been finally completed or accepted." The exclusion obviously refers to the insured's work product; here, National Label's building was Davis's work product.

 As noted above, however, National Label's complaint against Davis alleged more than damage to the building; damage to machinery was part of the complaint. Davis suggests that other consequential damages (loss of profits) were also litigated at arbitration, and seeks the entire $50,000. of the arbitrators award for *any* breach of a duty to indemnify. It argues that the insurer can no longer dispute apportionment among indemnifiable and non-indemnifiable items of damage, because it did not defend the case in the first place; and it must therefore bear the burden of the arbitrator's decision not to particularize damages. The argument is superficially reasonable, but it is clear that damages recoverable because of breach of the duty to defend and those recoverable because of breach of the duty to indemnify are separate. Calculation of the former does not depend upon the policy's covering any particular item of damage, while calculation of the latter certainly does. *Alabama etc., Bureau Mutual Casualty Company v. Moore,* 349 So.2d 1113 (Ala.1977); *Gedeon v. State Farm Mutual Auto Insurance Co., supra.* The Court is not in a position, without further briefing and development of the facts, to make a determination as to what percentage of the $50,000. arbitrator's award and court judgment correspond to which indemnifiable elements of damage.

Thus, the indemnity issues remaining to be tried include whether Davis expected the harm; and, if not, whether loss of profits was a part of the arbitrator's award; and, if so, what percentage of the award consisted of consequential damages such as damage to machinery, loss of profits or other loss, not including damage to the building.