The STATE OF IDAHO, Plaintiff,

v.

The BUNKER HILL COMPANY, a Delaware corporation; Pintlar Corporation, a Delaware corporation; Gulf Resources & Chemical Corporation, a Delaware corporation; and John Does 1 to 500, Defendants.

GULF RESOURCES & CHEMICAL CORPORATION, Third-Party Plaintiff,

v.

The AETNA CASUALTY AND SURETY COMPANY and the Home Indemnity Company, Third-Party Defendants.

GULF RESOURCES & CHEMICAL CORPORATION, and Pintlar Corporation, Third-Party Plaintiffs,

v.

The FIDELITY AND CASUALTY COMPANY OF NEW YORK; Pacific Insurance Company; Continental Re-Insurance Corporation; First State Insurance Company; Northwestern National Insurance Company, Northwestern National Casualty Company; Admiral Insurance Company; The Insurance Company of the State of Pennsylvania; and Pacific Indemnity Company (Chubb), Third-Party Defendants.

PINTLAR CORPORATION, Third-Party Plaintiff,

v.

UNDERWRITERS AT LLOYD'S, LONDON, Third-Party Defendant.

AETNA CASUALTY AND SURETY COMPANY, Third-Party Plaintiff,

v.

FIRST STATE INSURANCE COMPANY, Northwestern National Insurance Company, and Northwestern National Casualty Company, Third-Party Defendants.

CONTINENTAL RE-INSURANCE CORPORATION, a California corporation; Pacific Insurance Company, a California corporation; and Fidelity & Casualty Company of New York, a New York corporation, Third-Party Plaintiffs,

v.

FIRST STATE INSURANCE COMPANY, Northwestern National Insurance Company, and Northwestern National Casualty Company, Third-Party Defendants.

PINTLAR CORPORATION, Third-Party Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, Third-Party Defendant.

Civ. No. 83–3161.

United States District Court, D. Idaho.

Sept. 2, 1986.

Jim Jones, Atty. Gen., State of Idaho, P. Mark Thompson, Deputy Atty. Gen. Chief, Administrative Law & Litigation Division, Boise, Idaho, Sheila Glusco Bush, Deputy Atty. Gen. Administrative Law & Litigation Division, for plaintiff State of Idaho.

William F. Boyd, Fred M. Gibler, Charles L.A. Cox, Evans Keane Koontz Boyd &

Ripley, Kellogg, Idaho, James P. Keane, Evans Keane Koontz Boyd & Ripley, Coeur d'Alene, Idaho, for defendants and third-party plaintiffs Bunker Hill; Pintlar; Gulf Resources.

R.B. Rock, Robert B. Luce, Kristi Emig-Mark, Moffatt Thomas Barrett & Blanton, Boise, Idaho, for Home Indemnity Company.

John P. Howard, Marc A. Lyons, Quane Smith Howard & Hull, Boise, Idaho, for Fidelity & Casualty; Pacific Ins.; Continental Re-Insurance; Northbrook Ins.

Richard C. Mellon, Jr., D. Alan Kofoed, Elam Burke & Boyd, Boise, Idaho, for First State Ins.; Northwestern Nat'l Ins.; Northwestern Nat'l Casualty.

Howard Humphrey, Clemons Cosho & Humphrey, Boise, Idaho, Frank R. Morrison, Jr., Bassett & Morrison, Seattle, Wash., for The Insurance Co. of Pennsylvania.

James B. Lynch, Scott W. Marotz, Charles R. Clark, Imhoff & Lynch, Boise, Idaho, for Admiral Insurance.

James P. Barber, Ray L. Wong, William J. Casey, Hancock Rothert & Bunshoft, San Francisco, Cal., Gardner W. Skinner, Jr., Robert D. Lewis, Cantrill Skinner Sullivan & King, Boise, Idaho, for Underwriters at Lloyd's, London—Jervois.

R.B. Kading, Jr., Scott D. Hess, Warren Jones, Eberle Berlin Kading Turnbow & Gillespie, Boise, Idaho, for Pacific Indemnity; Aetna Casualty.

## MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

On June 13, 1986, this court held a hearing on all pending motions in this matter to decide motions which raise insurance defense issues. These motions will be addressed individually below.

## I. CONTINENTAL RE-INSURANCE CORPORATION

Gulf Resources & Chemical Corporation/Pintlar Corporation (Gulf/Pintlar), and Continental Re-Insurance Corporation, The Fidelity and Casualty Company of New York, and Pacific Insurance Company (Continental) have brought cross-motions on the issue of the duty to defend. Continental's motion for summary judgment also requests a ruling from this court on the issue of indemnity. The summary of the law regarding the duty to defend outlined below will be applicable, and not repeated, to motions addressed later in this memorandum opinion.

Three recent Idaho cases have addressed the duty to defend issue under Idaho law. In *Hirst v. St. Paul Fire & Marine Insurance Co.*, 106 Idaho 792, 683 P.2d 440 (Ct.App.1984), the court held:

> As a general rule, an insurer must defend a suit against the insured where the complaint alleges facts which, if true, would bring the case within the policy coverage....
>
> ....
>
> The rationale for placing the burden on an insurer to defend a complaint which presents a potential liability of the insured was discussed in *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178 (7th Cir. 1980). There the court said:
>
> > While it is true that an insurance company's obligation to defend depends upon the underlying complaint against its insured, this obligation, as noted previously, is present whenever there appears to be a *potential* for coverage under the policy.... Especially since the advent of notice pleading, in a case where there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, the insurer must defend, and its defense obligations will continue until such time as the claim against the insured is confined to a recovery that the policy does not cover....
> >
> > To hold otherwise would be to place upon the insured the burden of demonstrating in advance of the underlying litigation which of the competing theories of recovery against it was applica-

ble for purposes of insurance, thereby frustrating one of the basic purposes of such a clause in the insurance contract—protection of the insured from the expenses of litigation....

*Id.* at 1185.

Although the allegations in the plaintiff's complaint frame an insurer's duty to defend, those pleadings are not to be read narrowly. Rather, a court must look at the full breadth of the plaintiff's claim....

....

It is also well established that the duty of an insurer to defend, for the protection of the insured, is a separate, unrelated and broader obligation than a duty to pay for damages under the insurance policy.

*Id.* at 797–98, 683 P.2d 440 (citations omitted) (emphasis in original). In accord, *Standlee v. St. Paul Fire & Marine Insurance Co.,* 107 Idaho 899, 693 P.2d 1101 (Ct.App.1984); *Maxson v. Farmers Insurance of Idaho, Inc.,* 107 Idaho 1043, 695 P.2d 428 (Ct.App.1985).

■ The duty to defend arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a *potential* for liability that would be covered by the insured's policy. The problem which faces the insurers when a claim is made is determining if there is a potential for liability. However, as noted by the *Hirst* case, since the advent of notice pleading there will likely be broad ambiguous claims made against the insured making it more difficult for the insurer to determine whether the insurance policy covers the claims. But as the court noted, where there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, or which is potentially included in the underlying complaint, the insurer must defend regardless of potential defenses arising under the policy or potential defenses arising under the substantive law under which the claim is brought against the insured.

■ It appears from the fact that some of the insurers in this action have failed to recognize a duty to defend and have, instead, filed declaratory judgment actions, that there is confusion as to how to proceed in a situation similar to the one at hand. In *Maxson,* the court approved the use of a declaratory action to determine coverage. It is a misconception of the duty to defend, however, if the insurer refuses to defend and seeks a determination of the duty while the underlying case progresses against the insured, and then if found obligated under its duty, the insurer merely steps in and defends and pays defense fees that have accumulated. The proper procedure for the insurer to take is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy; if so, then the insurer must immediately step in and defend the suit. At the same time, if the insurer believes that the policy itself provides a basis, i.e., an exclusion, for noncoverage, it may seek declaratory relief. However, this does not abrogate the necessity of defending the lawsuit until a determination of noncoverage is made. The insurer should not be allowed to "guess wrong" as to the potential for coverage. "[T]he provision for defense of suits is useless and meaningless unless it is offered when the suit arises." 7C J. Applemen, *Insurance Law and Practice* § 4684 at 83 (Berdal ed. 1979).

Once it is concluded that an insurer owes its insured a duty to defend, the duty to defend and pay defense costs continues until such time as the insurer can show that the claim against the insured cannot be said to fall within the policy's scope of coverage. As stated in *C. Raymond Davis and Company, Inc. v. Liberty Mutual Insurance Co.,* 467 F.Supp. 17 (E.D.Pa.1979): "However, if coverage (indemnification) depends upon the existence or nonexistence of facts outside of the complaint that have yet to be determined, the insurer must provide a defense until such time as those facts are determined, and the claim is narrowed to one patently outside the coverage." *Id.* at 19 (citations omitted).

Continental insured Gulf for the period January 1, 1972, to April 15, 1978. Continental's first argument in refusing to defend is that the State of Idaho's cause of action arising under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA) does not create a potential legal obligation because recovery for all releases and damages which occur wholly before December 11, 1980, is barred by Section 107(f) of the CERCLA statute. The short answer to this argument is that the standard duty to defend clause found in the insurance contract states that the insurer has the right and duty to defend any suit against the insured, "even if any of the allegations of the suit are groundless, false, or fraudulent." Whether the substantive law under which relief is sought provides for liability for the time period claimed is a question for the insurer to raise in defense of the insured. The insurer should seek summary judgment against the plaintiff and then, if successful, a declaration of noncoverage.

Second, Continental claims that the standard pollution exclusion clause found in the policy excludes coverage for the claims brought by the State of Idaho. On January 16, 1985, this court addressed the pollution exclusion clause on a motion for summary judgment brought by Continental Insurance. The court found that questions of fact remain regarding whether sudden and accidental discharges of pollution have occurred. Further, the court found that the affidavit of Gene Baker, while directed at incidents prior to December 9, 1979, may well cover events after that date. The affidavit of Baker and the other affidavits on file clearly cover all of the time period relevant to this lawsuit. Under any analysis regarding the pollution exclusion clause, questions of fact remain.

Third, Continental argues that the property damage which the insurance policy covers is that which "occurs during the policy period." Continental argues that pollution releases which occurred during the policy period resulting in damages after the policy period are not covered by the insurance policy. This question bears both upon the duty to indemnify and the duty to defend. It will be discussed below as it relates to both duties.

The court has held that the State may recover only for nuisance damages occurring after December 9, 1979. Memorandum Opinion and Order, filed January 16, 1985. This court has held that the State may only recover for damages under CERCLA which occurred after December 11, 1980. Memorandum Opinion and Order, filed May 22, 1986. However, the court has ruled that the State may recover for damages occurring after the enactment of CERCLA even where the release which caused the damage occurred preenactment (potentially years before enactment). To be decided is whether all of the damage must occur during the policy period or whether, with respect to continuing and latent damages, coverage is provided for those damages after the expiration date of the policy.

The standard definition of property damage reads:

"Occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured....

"Property damage means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The question then is whether the policies at issue are to be read literally or whether in the circumstances where the release occurs during the policy period and the damage lies latent and manifests itself after the expiration of the policy or continues to occur after the expiration of the policy, the insurance policy in effect at the time of the release will be held to cover those damages.

The parties have briefed the analysis presented in various asbestos cases regarding the trigger of coverage. The trigger of coverage question has resulted in the courts finding three different trigger theories. These are manifestation, exposure, and continuous exposure or multiple trigger. The manifestation theory holds that the policy which triggers is that which is in effect at the time the injury becomes apparent or manifests. The exposure theory is based on the idea that the policy which triggers is that which is in effect at the time of the first exposure to the harm. The multiple trigger theory combines the manifestation and exposure theories and provides that all policies trigger which are in effect from the time of the initial exposure through manifestation. *See Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.,* 682 F.2d 12 (1st Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983) (manifestation); *Insurance Company of North America v. Forty-eight Installations,* 633 F.2d 1212 (6th Cir.1980) (exposure); *Hancock Laboratories, Inc. v. Admiral Insurance Co.,* 777 F.2d 520 (9th Cir.1985) (exposure); *Keene Corp. v. Insurance Company of North America,* 667 F.2d 1034 (D.C.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) (multiple trigger); *AC & S Inc. v. Aetna Casualty and Surety Co.,* 764 F.2d 968 (3d Cir.1985) (exposure); *American Home Products Corp. v. Liberty Mutual Insurance Co.,* 565 F.Supp. 1485 (S.D.N.Y.1983) (injury in fact); *Pacific Indemnity Co. v. Bunker Hill Co.,* Civil Nos. 79–2010 and 82–3082 (D.Idaho July 3, 1984) (multiple trigger) [Available on WESTLAW, DCTU database].

■ The court has studied the cases cited above, the question of trigger of coverage, and the language of the policies and has determined that, under the circumstances of this case, the court need not adopt a trigger of coverage theory. The language of the policies is clear and unambiguous. The property damage for which insurance is provided must occur during the policy period. The plain language of the policy suggests that the intent of the parties was to provide insurance against damages occurring during the policy period from activities of the insured. The policy coverage focuses on the time of the occurrence of the damage and not the time of the occurrence of the event which gives rise to the damage.

As noted previously, Continental insured Gulf from a period beginning January 1, 1972, to April 15, 1978. Since this court has previously held that the State may only recover under its nuisance claim for the time period after December 9, 1979, and under its CERCLA claims for damages occurring after December 11, 1980, the Continental policies do not provide coverage for any damages which the plaintiff may recover in this action. Continental has no duty to indemnify the defendants in this action.

While the court has determined that Continental has no duty to indemnify, the analysis with respect to the duty to defend is separate and distinct. The court has addressed a difficult legal question in determining whether all of the damage must occur during the policy or whether coverage is provided for those injuries which occur after the expiration date of the policy. In any event, the question is one in which there was an arguable basis for coverage and a potential for coverage under the policy until the court's decision herein. The Amended Complaint brought by the State of Idaho seeks damages against Gulf for activities and injuries during the time period the policies issued by Continental were in existence. The Complaint states a claim against the insured during the Continental policy period, and arguable claims and a potential for coverage have existed until the date of this order. Therefore, a duty to defend has existed under the Continental policy until the date of this order. Since a declaration of non-coverage is herein entered by the court, the duty to defend lapses on the date of this order.

## II. AETNA CASUALTY INSURANCE COMPANY

Aetna has filed its motion for summary judgment seeking a determination from

this court that it owes neither a duty to defend nor a duty to indemnify. Aetna entered into five separate insurance contracts with Gulf. The policy periods encompassed by those five policies began November 1, 1967, and extended to April 15, 1972. Aetna has raised the trigger of coverage analysis previously discussed in Continental's motion. For the reasons stated above, under that analysis, Aetna has no duty to indemnify the defendants in this action. Aetna's policies lapsed prior to December 9, 1979, and therefore, raise no duty to indemnify for any damages which the plaintiff may be entitled to recover under the causes of action asserted in this action.

The effect of the trigger of coverage analysis upon the duty to defend has been discussed under Continental's motion and is equally applicable to Aetna's duty to defend. Aetna has also raised arguments concerning the occurrence clause found in the insurance policies. This argument is directed toward Aetna's duty to indemnify. Since the court has found that Aetna owes no duty of indemnification, the court need not endeavor into an analysis of the occurrence clause to resolve Aetna's motion. The Amended Complaint brought by the State of Idaho seeks damages against Gulf for activities and injuries during the time period the policies issued by Aetna were in existence. While this court has found that Aetna owes no duty of indemnification, the Amended Complaint states a claim against the insured during the policy period and raises arguable claims and a potential for coverage, as that phrase is used in the analysis with respect to the initial determination of the duty to defend. Aetna owes a duty to defend.

## III. ADMIRAL INSURANCE COMPANY

Admiral Insurance Company (Admiral) has filed a motion for summary judgment seeking a determination from this court that the policy which it issued gives rise to no duty to defend or indemnify under the circumstances of this action. Pintlar and Gulf have filed a cross-motion for summary judgment on the issue of the duty to defend. Admiral issued an insurance policy to Bunker Hill which was to be effective from April 7, 1982, until March 31, 1983. Apparently, no assignment of the policy was made at the time of the sale of the facility and so the policy terminated on November 1, 1982.

### A. *Gulf as Named Insured*

■ Admiral has contended that Gulf was not a named insured under policy No. A2CG6552. Admiral contends that only Bunker Hill was the named insured. The Admiral policy states that the named insured is the Bunker Hill Company, a subsidiary of Gulf Resources and Chemical Corp. Throughout the remainder of that policy, the named insured is referred to as the Bunker Hill Company, et al. The clear inference from that is that Gulf is also a named insured. However, the court need only look to the binder for policy No. A2CG6552. Under the binder, the named insured is "Gulf Resources and Chemical Corporation, Bunker Hill Mine." "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application lawfully made a part of the policy." Idaho Code § 41–1822 (1977). The court has concluded that, as a matter of law, Gulf is indeed a named insured under the Admiral policy.

### B. *Occurrence Clause*

Admiral contends that no "occurrence" has taken place because any alleged damages which occurred during the Admiral policy period were expected or intended, as a matter of law. While development of this issue was not necessary to decide Aetna's motion for summary judgment, it is important under Admiral's motion that the correct analysis be set forth regarding this issue.

The standard occurrence clause found in these insurance contracts reads as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

bodily injury or

property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent. . . .

The policy defines the word "occurrence":

"[O]ccurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured. . . .

Admiral contends that the court must focus on the terms "expected" and "intended" in the definition of "occurrence." Admiral argues that unless there is an *injury* which is neither expected nor intended, there is no occurrence. That is, indeed, the way the definition of occurrence seems to read; an occurrence is an accident which results in bodily harm or property damage which is neither expected nor intended. From this argument, Admiral asserts that while questions of fact remain regarding whether there have been "sudden and accidental" discharges of pollution, as this court has previously held, the resulting property damage was not unexpected. Admiral points out that the "sudden and accidental" releases took place on a fairly regular basis and argues that those releases and the resulting damage became expected.

As this court noted in its Order filed January 15, 1985, the briefing with respect to the sudden and accidental language in the pollution exclusion clause was confused with the unexpected and unintended language in the occurrence clause. The court ruled that the unexpected and unintended language, for purposes of the pollution exclusion clause was irrelevant. The cases cited by the parties have apparently had the difficulty of confusing the language in the two clauses. See *City of Carter Lake v. Aetna Casualty and Surety Co.*, 604 F.2d 1052 (8th Cir.1979); *Barmet of Indiana, Inc. v. Security Insurance Corp.*, 425 N.E.2d 201 (D.Ind.1981); *American States Insurance Co. v. Maryland Casualty Co.*, 587 F.Supp. 1549 (E.D.Mich. 1984); *Great Lakes Container Corp. v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 727 F.2d 30 (1st Cir.1984).

The court has determined that the occurrence clause found in the policy is ambiguous. Focusing on the language, it can be seen that occurrence is defined initially as an "accident." Thereafter it is qualified by the fact that the accident must result in unexpected and unintended injury. Admiral, in effect, argues that the event must be sudden and accidental and the resulting damage must be unexpected and unintended in the context of pollution damage. The court is concerned about the scope of coverage in this context. For example, if an individual is involved in an accident in an automobile, the individual would reasonably expect property damage and bodily harm. Similarly, where sudden and accidental releases of pollutants take place, one would naturally expect to flow therefrom injury to the environment. If Admiral is seriously contending that its insurance covers only unexpected injuries, it is likewise arguing that it covers nothing indeed.

The court has determined that the language "expected" and "intended" in reality goes to defining "accident"—the event, not the resulting harm. If the event/accident is expected or intended, it is by definition not an accident. This court has previously ruled that whether there have been sudden and accidental releases of pollutants involves questions of fact.

█ It is axiomatic that where a clause in an insurance contract is susceptible to more than one construction, the intent of the parties is of utmost concern and the construction which protects the insured is

the preferred. *J.A. Casey v. Highlands Insurance Co.*, 100 Idaho 505, 509, 600 P.2d 1387 (1979). "Occurrence," as used in the policy, is an event, i.e., an accident. The definition of occurrence which attempts to further clarify the term "accident" by focusing on the terms "expected" and "intended" is ambiguous. To exclude from coverage damages which are expected to be the result of an accident is to provide no coverage at all. Clearly, the parties did not intend that the clauses in the insurance policy, read together, would result in no coverage. The words "expected or intended" should be applied to defining the event/accident. In the pollution context, then, the event of sudden and accident releases of pollutants is the same as occurrence. The finding that there are questions of fact as to whether there have been sudden and accidental pollution discharges equally applies to whether there has been an occurrence. Furthermore, even if the court were disposed to read the clause as Admiral has, questions of fact would remain.

### C. *Policy Coverage for Operations During Shutdown*

■ The Admiral policy states that it covers operations of the complex during "shutdown and sale of underground mine." Admiral argues that its policy does not cover production releases and only covers the activity involved in shutdown and sale of the underground mine. The defendants have not directly addressed this issue. Their contention, however, seems to be that the Admiral policy, while insuring only the activities of the complex during shutdown and sale of the underground mine, still covers releases which occur at that time. For instance, if mine water is released at that time causing damage, then the Admiral policy covers such damage. Apparently, there was no production at the time the Admiral policy was in effect and all of the activities involved were shutdown activities. While the court agrees with Admiral that the policy insures the operations of the Bunker Hill complex during the shutdown and sale of the underground mine, there

are at least factual questions to be resolved as to whether releases occurred during that time which are covered by the policy, making summary judgment inappropriate.

### D. *Erosion Exclusion Clause*

An exclusion in the Admiral policy entitled "subsistence, pollution and contamination, and change of course of underground streams or river exclusion," states:

It is agreed that this policy does not apply: 1. To property damage directly or indirectly arising out of, caused by, resulting from, contributing to, or aggravated by the subsistence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud-flow, rising, tilting, or in any other movement of land or earth.

Subheading 2 under that exclusion excludes contamination due to oil or petroleum spill and subsection 3 deals with activities which cause change in the course of underground streams or rivers.

Admiral has taken out of this subsection the word "erosion" and has asserted that the claims made by the State deal with damages that, in one form or another, arise from erosion. Admiral contends that leaching of metal ions from the water is a form of erosion; groundwater pollution by leaching is a form of erosion; and fugitive dust is generated by wind erosion. In essence, Admiral attempts to assert that all claims made by the State are related, in one way or another, to erosion.

In opposition, the defendants argue that the exclusion must be looked at as a whole. Turning to the title of the exclusion and the subsections of the exclusion, subsection 1 deals with earth movement and subsistence, subsection 2 with pollution and contamination by petroleum products, and subsection 3 with activities which cause changes of course of underground streams or rivers. As defendants point out, subsection 1 deals with "earth movement." The defendants argue that this exclusion clause deals with normal property damage which would result from mining, i.e., movement

of the earth. The defendants argue that it is unreasonable for Admiral to focus on the word "eroding" and expand it to include virtually any destruction, deterioration or disappearance. Even if the court were to accept the broad definition of erosion, Admiral contends that it does not include all of the damages which the State seeks and there are questions of fact as to what damages were caused by erosion as that term may later be defined.

■ The court has serious doubts that the intent of the parties would be to exclude, under the term "erosion," all discharges of hazardous substances through seepage, wind, leaching and other movement of particulates. However, the plain language of the exclusion would seem to apply to damages which are "indirectly" related to erosion. For purposes of this motion, the court has concluded that the court need not, at this time, determine the outer reaches of the erosion exclusion clause. There are questions of fact regarding the extent of the damage claimed by the State which may have been caused by erosion or some other event.

### E. *Idaho Code § 41–1329*

Admiral contends that the claim made by the defendants based on Idaho Code § 41–1329 should be dismissed. Admiral argues first that the defendants have failed to allege the prescribed conduct "with such frequency as to indicate a general business practice," which makes the claim deficient and requires dismissal pursuant to Rule 12(b)(6). Second, Admiral contends that there is no private right of action under Idaho Code § 41–1329.

The defendants assert that, in fact, the third-party complaint does allege a business practice of Admiral and it is not limited to this particular case. The court has determined that the third-party complaint sufficiently alleges a business practice and dismissal on this ground is not warranted.

Idaho Code § 41–1301, *et seq.*, is entitled "trade practices and frauds." Title 41 deals strictly with insurance. Since the Supreme Court of Idaho has not addressed the question of whether a private cause of action is implied from the Act, the court must attempt to predict how the State Supreme Court would resolve this question of first impression. *See Morgan v. American Family Life Assurance Company of Columbus*, 559 F.Supp. 477 (W.D.Va.1983). Both parties agree that there are no Idaho cases which expressly allow for private suits under the Act. The Act does not itself expressly authorize private suits to obtain relief for unfair trade practices.

■ The court notes that several cases in other jurisdictions have recognized a private cause of action under similar unfair trade practices acts. *Jenkins v. J.C. Penney Casualty Insurance Co.*, 280 S.E.2d 252 (W.Va.1981); *Morgan v. American Family Life Assurance Company of Columbus*, 559 F.Supp. 477 (W.D.Va.1983); *Royal Globe Insurance Co. v. Superior Court*, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979); *Safeco Insurance Company of America v. JMG Restaurant, Inc.*, 37 Wash.App. 1, 680 P.2d 409 (1984); and *Klaudt v. Flink*, 202 Mont. 247, 658 P.2d 1065 (1983). The court in *Seeman v. Liberty Mutual Insurance Co.*, 322 N.W.2d 35 (Iowa 1982), found that the statute was intended to be an administrative remedy for the insurance board and its directors, and not to provide a private right of action. In *United First Federal Savings and Loan Association v. Transamerica Insurance Co.*, Case No. 81921, (District Court for the Fourth Judicial District, Ada County, Memorandum Decision and Order, filed July 31, 1984), the court reviewed Title 41, Chapter 13, of the Idaho Code and determined that the legislature did not intend to create a private cause of action under the Act. This court is inclined to agree with Judge Newhouse's analysis and believes that the courts for the State of Idaho, if faced with this issue, would not recognize a private cause of action under Idaho Code §§ 41–1301–1330. This court is not inclined to recognize a private right of action where the Idaho courts have not done so and where the statute neither expressly nor impliedly creates such a right.

Therefore, count four of the Complaint against Admiral, based on Idaho Code § 41–1329, will be dismissed.

### F. *Conditions Precedent*

The insurance policy issued by Admiral contains a standard clause which states that in the event of an occurrence which is potentially covered by the policy, written notice is to be given to the insurance company "as soon as practicable." Also, if a claim is made or suit is brought against the insured, the insured must immediately forward to the company's authorized representative any demand, notice, summons and other process received. Admiral has argued that Pintlar and Gulf breached these conditions precedent to any action against the insurer and, therefore, the action against Admiral must be dismissed.

■ The parties have raised arguments concerning whether or not Idaho law requires a showing of prejudice by the insurance company. The Idaho cases are uniform in holding that substantial performance by the insured is all that is required to satisfy these conditions and valid excuses from the insured will be considered in finding substantial compliance. *Viani v. Aetna Insurance Co.*, 95 Idaho 22, 27, 501 P.2d 706 (1972); *Leach v. Farmer's Automobile Inter-Insurance Exchange*, 70 Idaho 156, 213 P.2d 920 (1950). The *Viani* court specifically ruled on the issue of whether prejudice was a necessary element with respect to these conditions precedent. The court held that prejudice was not material in this situation. The court stated that the rule allows for substantial compliance and consideration of excuses for the insured on the one hand and, to make the rule equitable, provides that the insurance company need not show prejudice. *Viani v. Aetna Insurance Co.*, 95 Idaho at 30, 501 P.2d 706.

■ Admiral avers that a notice of claim was sent to defendants on December 8, 1983, and the suit was filed the next day. Admiral points to a stipulation between defendants and the plaintiff regarding an extension of time which was filed on April 6, 1984, and suggests that this clearly is a usurpation of duty to defend. Admiral received a letter from the defendants on April 23, 1984, which requested defense. Admiral claims that these facts show that the defendants usurped the insurance company's right to defend and failed to comply with conditions precedent. Frankly, the court can find no usurpation of defense or failure to substantially comply. However, questions of fact remain as to whether substantial compliance has been achieved by the defendants making summary judgment inappropriate.

### G. *No-Action Clause*

■ Admiral makes the assertion that the no-action clause in the insurance contract prohibits the insured from suing Admiral until a judgment is returned against the insured or a written agreement is reached between the insured, claimant and the insurer. The clause in the contract deals with actions for indemnity after judgment has been entered against the insured or a settlement has been reached. The clause does not prohibit suit where the insurer has failed to fulfill its obligation to defend. The clause is simply not relevant to the situation at hand.

### H. *Punitive Damages/Bad Faith*

As stated from the bench during oral argument, Admiral's motion to dismiss the defendants' punitive damages claims is premature and must be left for decision at the time of trial. Therefore, the court will deny the motion to dismiss the punitive damages claim.

Count three of the third-party complaint states a cause of action in tort for bad faith against the insurer. Since the Idaho Supreme Court has not addressed this issue, it is for this court to predict what the Idaho courts would do. The defendant points out that in every contract there is an implied covenant of good faith and fair dealing and then makes the leap to finding a cause of action in tort for breach of implied duty of good faith in fair dealing. Only one of the

cases cited by the defendant discussed the breach of an insurer's implied duty of good faith in fair dealing as a basis for liability in tort. *See Farmers Group Incorporated v. Trimble*, 691 P.2d 1138 (Colo.1984). The remaining cases simply discuss bad faith as the absence of good faith required by the implied contract.

■ The court has reviewed the cases of *Brown v. Fritz*, 108 Idaho 357, 699 P.2d 1371 (1985), and *Linscott v. Rainier National Life Insurance Co.*, 100 Idaho 854, 606 P.2d 958 (1980), and has determined that the strong indication therefrom is that bad faith arising out of the contractual relationship is more properly addressed in a claim for punitive damages, not as a separate cause of action. Therefore, the defendants' third cause of action will be dismissed.

## I. *Duty to Defend*

■ As noted previously, the duty to defend arises upon the filing of a complaint containing allegations which, in whole or in part, read broadly, reveal a potential for liability and coverage by the insured's policy. Admiral issued an insurance policy to Bunker Hill which was to be in effect from April 7, 1982, until March 31, 1983. The Amended Complaint brought by the State of Idaho seeks damages against Gulf for activities and injuries during the time period the policies issued by Admiral were in existence. The court has found no basis in Admiral's motion for summary judgment on the issue of indemnity for which to grant that motion. Therefore, Admiral's motion for summary judgment on the issue of indemnity will be denied. The court has previously found that the causes of action brought by the State encompass the time period during which the Admiral policy was in effect and that the Amended Complaint of the State clearly suggests a potential for liability and coverage under the Admiral policy, and therefore, Admiral owes a duty to defend. Therefore, Gulf and Pintlar's motion for summary judgment on the issue of duty to defend will be granted.

## IV. JERVOIS UNDERWRITERS

### A. *Duty to Defend*

Jervois Underwriters issued certificate of insurance Nos. L62150 and L70631 to the Bunker Hill Co. Certificate No. L62150 covers April 1, 1959, to April 1, 1962. Certificate No. L70631 covers June 1, 1962, to January 1, 1966.

Jervois Underwriters has argued that the "cooperation of assured" clause in the policies issued is in some way not the same as the standard duty to defend clauses found in the other insurance contracts. The cooperation of assured clause states:

If any claim or claims aggregating a sum in excess of the deductible limit described in paragraph No. 3 is or are made against the insured hereunder for loss or damage to the property of others, resulting or claimed to have resulted from any occurrence, the underwriter shall have the right to reject said claim or claims, and if the underwriters reject said claim or claims then the underwriter shall defend in court any suit or suits that may be brought for the collection thereof, and all expenses incurred in investigating or defending said suit or suits are to be borne by the underwriters.

The defendant has taken the position that the duty to defend arises upon the rejection of the claim or claims by Underwriters. Once the rejection has occurred, Underwriters is duty-bound to defend.

■ The court finds that both parties are in error on this point. If the trigger of the duty to defend is the rejection of the claims made against the insured by the insurer, that rejection may be delayed or withheld with apparent impunity. If so, the insured is left undefended during the time the insurer takes to accept or reject a claim. In the case at bar, Jervois Underwriters have neither formally rejected the claim, nor have they paid the claim made by the State (so must be assumed to have rejected the claims). Furthermore, to hold that the duty to defend arises at the time the insurer rejects or accepts the claim flies in the face of Idaho law which requires

defense upon filing of the complaint. The case of *CPS Chemical Company, Inc. v. Continental Insurance Co., et al.,* 203 N.J.Super. 15, 495 A.2d 886 (N.J.Super.Ct. App.Div.1985), is not controlling in this case. The insurer must act promptly in defense of its insured.

### B. *Pintlar as Successor to Bunker Hill*

██ This motion was brought by Pintlar to enforce the policies issued to Bunker Hill Co. Jervois has claimed that there remain questions of material fact as to whether Pintlar succeeded to Bunker Hill's rights under the policy. Jervois states that there are questions as to whether Bunker Hill, after the 1968 merger with Gulf, was the same Bunker Hill as was insured by Jervois and whether Pintlar succeeded to Bunker Hill's rights. The undisputed evidence in the record is, however, that Gulf and Bunker Hill merged in 1968 with Bunker Hill becoming the wholly-owned subsidiary of Gulf which assumed all rights and obligations of the former Bunker Hill. The Amended Complaint brought by the State of Idaho seeks damages against Gulf for activities and injuries during the time period the policies issued by Jervois Underwriters were in existence. The complaint states a claim against the insured during the policy period and raises arguable claims and potential for coverage. Jervois Underwriters owes a duty to defend. Therefore, the defendants' motion for partial summary judgment on the issue of duty to defend brought against Jervois Underwriters will be granted. Jervois Underwriters have asserted no facts which would place in issue the fact that Pintlar has succeeded to Bunker Hill's rights under the policies issued.

### V. HOME INDEMNITY COMPANY

While Home Indemnity Company (Home) has raised issues regarding the territorial limits of the policies issued and whether Gulf was a named insured under those policies, the court has determined that it need not decide those issues. The court has concluded that Home owes neither a duty of indemnity nor a duty to defend in this action.

██ Home insured Gulf between July 31, 1963, and May 9, 1968. On March 15, 1968, Gulf and Bunker Hill entered into an agreement of merger. The agreement stated that "at the effective date of the merger" the surviving corporation assumes the liabilities of the constituent corporations. This agreement clearly reflects that it is an agreement which is contingent until the effective date of the merger. The merger between Gulf and Bunker Hill took place on May 23, 1968. Gulf's contention that Home assumed the liabilities of Bunker Hill prior to the effective date of the merger is simply erroneous.

As can be readily noted, the agreement to merge was before and the effective date of the merger was after the expiration of the last policy issued by Home. It is true, as pointed out by Gulf, that the State seeks relief from Gulf for the time period in which the policies were in effect. While this criteria serves to invoke the duty to defend in all of the insurance companies discussed above, the situation with Home is entirely different. Home's policy issued to Gulf lapsed prior to the effective date of the merger. The effective date of the merger was nearly three weeks after the last policy lapsed. Also, both of these companies being Delaware corporations, the merger is not completed until it is approved by the stockholders. A certificate of adoption in this case is dated May 28, 1968. There is no possibility that Gulf can be liable prior to May 28, 1968. To hold otherwise would subject Gulf to liability for being an entity in existence prior to any relationship with the State of Idaho. While the State appears to make a claim against Gulf for damages prior to May 28, 1968, the State's claim against Gulf for that time period has no arguable basis nor results in "a potential" for liability to Gulf. Therefore, at the time the complaint was filed, there was no potential for liability to Gulf prior to May 28, 1968, and no duty to defend arose as to the Home policies at the

time of filing the complaint. Home will be dismissed from this case. Home's motion for summary judgment, both as to duty to defend and duty to indemnify, will be granted.

## VI. PACIFIC INDEMNITY COMPANY

### A. *Policy Coverage for Joint Venturers*

Pacific Indemnity has brought this motion for summary judgment asserting that it neither owes a duty to defend nor indemnify. Three policies issued by Pacific Indemnity cover the time period between January 1, 1972, and January 1, 1975. The policies were issued to "The Bunker Hill Company and Stauffer Chemical Company, a joint venture dba: North Idaho Phosphate Company." The "persons insured" section of the policies states in part: "[I]f the named insured is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such."

The basic argument made by Pacific is that coverage is provided only to the joint venturer, North Idaho Phosphate Co., and is not provided to the Bunker Hill Co. and Stauffer Chemical except to the extent there is "pass-through liability" as a result of operation of joint venture and partnership principles apply.

In *Clawson v. General Insurance Company of America*, 90 Idaho 424, 432, 412 P.2d 597 (1966), the Idaho Supreme Court stated that: "[I]t is the conclusion of this court that a joint venture is not an entity separate and apart from the parties composing it." It is axiomatic that a joint venture is nothing more than a form of doing business. Pacific would have the court believe that a potential plaintiff cannot sue a joint venturer as the joint venture is the only proper party, or that the individual venturer is without any insurance coverage for its activities as a joint venturer when the individual venturer is sued and not the joint venture. The court finds that the insurance policy covering the individual member of the joint venture "as such" means that the individual venturer is provided insurance coverage for its activities in the venture.

The cases which have dealt with individual partners or joint venturers' liability coverage have suggested that it is the partners or venturers that are protected, as well as the business entity. *McDonald v. Aetna Casualty and Surety Co.*, 47 Wis.2d 235, 177 N.W.2d 101 (1970); *Ohio Casualty Insurance Co. v. Russell Fike*, 304 So.2d 136 (Fla.App.1974). The State's first amended complaint makes reference to the phosphoric acid and fertilizer plant which was constructed and which appears to have been involved in the activity of the joint venturers in the joint venture. Therefore, Pacific Indemnity's motion for summary judgment will be denied.

## VII. FIDELITY AND CASUALTY COMPANY OF NEW YORK

It appears that Fidelity and Casualty Company of New York (Fidelity) issued policies covering activities of the North Idaho Phosphate Company from January 1, 1975, through January 1, 1981. Fidelity has moved this court for summary judgment on the issue of the duty to indemnify. Fidelity has claimed that Gulf has failed to comply with the notification conditions precedent found in the policies. A general discussion of the legal analysis attendant the conditions precedent issue is set forth above under Admiral's motion for summary judgment. Fidelity claims that it was not given notice of any claim until May 24, 1985. While the circumstances regarding notification are somewhat different from those raised by Admiral, there are the similar factual issues to be decided. Those issues include whether Fidelity was aware of the pending suit and the factual issue of substantial compliance. Fidelity has also raised the issue of coverage of individual venturers in a joint venture. This argument is identical to that raised by Pacific Indemnity and, for the same reasons, is

without merit. Fidelity's motion for summary judgment will be denied.

### VIII. ORDER

Based upon the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that the motion for summary judgment on the issue of indemnity brought by the Continental Re-Insurance Corporation, the Fidelity and Casualty Company of New York, and Pacific Insurance Company (Continental) should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that the motion for summary judgment on the issue of the duty of defend brought by Gulf Resources and Chemical Corporation/Pintlar Corporation against the Continental group should be, and is hereby, GRANTED. The Continental group owes a duty to defend the defendants until the date of this order.

IT IS FURTHER ORDERED that the motion for summary judgment on the duty to indemnify brought by Aetna Casualty and Surety Company should be, and is hereby, GRANTED. Aetna's Motion for Summary Judgment regarding the duty to defend should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that Admiral Insurance Company's motion for summary judgment on the issues of duty to defend and indemnify should be, and is hereby, GRANTED to the extent it seeks dismissal of counts three and four of the Complaint against Admiral. Those claims based upon Idaho Code § 41–1329 and tortious bad faith are hereby DISMISSED. Admiral's motion for summary judgment is in all other respects DENIED.

IT IS FURTHER ORDERED that the motion for summary judgment brought by Gulf and Pintlar against Admiral on the issue of the duty to defend should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that Pintlar's motion for partial summary judgment on the issue of the duty to defend brought against Jervois Underwriters should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that Home Indemnity Company's motion for summary judgment regarding the indemnity and defense issues should be, and is hereby, GRANTED. The Home Indemnity Company is hereby dismissed from this action.

IT IS FURTHER ORDERED that Pacific Indemnity Company's motion for summary judgment on the duties to defend and indemnify should be, and is hereby, DENIED.

IT IS FURTHER ORDERED that the Fidelity and Casualty Company of New York's motion for summary judgment should be, and is hereby, DENIED.