**TOTAL WASTE MANAGEMENT CORP.**

v.

**COMMERCIAL UNION INSURANCE CO., et al.**

**Civ. No. 92–261–JD.**

United States District Court,
D. New Hampshire.

March 8, 1994.

Andrew W. Serell, for plaintiff.

Peter G. Hermes, Kevin C. Devine, John Klein, Michael Lenehan, Howard Epstein, Paul B. Koepff, Edmund J. Boutin, Gregory A. Holmes, for defendants.

### REVISED ORDER [1]

DiCLERICO, Chief Judge.

The plaintiff, Total Waste Management Corporation ("TWM"), brought a two count action in Rockingham Superior Court seeking a declaratory judgment that the defendant insurers, Commercial Union Insurance Company ("Commercial Union"), National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), Insurance Company of North America ("INA"), and Maine Bonding & Casualty Company ("Maine Bonding"), each had an obligation to defend and indemnify TWM in an action ("underlying action") brought by Kleen Laundry and Dry Cleaning Services, Inc.

("Kleen"). The plaintiff also sought through its plea of assumpsit to recoup its expenses defending the underlying action. The court granted removal on Maine Bonding's petition. The court's jurisdiction is based on 28 U.S.C.A. §§ 1332(a) and 1441(a) (West Supp. 1993). Each defendant moves for summary judgment (document nos. 41, 43, 44, and 45). For the following reasons, the court grants INA's, Commercial Union's, and National Union's motions for summary judgment (document nos. 41, 43, and 44 respectively) and denies Maine Bonding's motion for summary judgment (document no. 45).

### Background

#### A. The Underlying Action

In the underlying action, Kleen sought recovery from TWM for costs that Kleen has incurred and will incur from "responding to releases and threatened releases of hazardous substances and oil on and about Kleen's property located in Lebanon, New Hampshire (the 'site')." *Kleen Laundry and Dry Cleaning Servs., Inc. v. Total Waste Management Corp.*, 817 F.Supp. 225, 227 (D.N.H. 1993). Kleen asserted the releases and threatened releases are the result of underground storage tank removal activities undertaken by TWM and of oil and hazardous waste disposal activities undertaken by Portland Waste Oil Corporation ("Portland Waste"), Conn–Val Oil Recycling ("Conn–Val"), and George West and Sons d/b/a Portland Oil Recycling ("George West"). *Id.* Kleen premised TWM's liability on two theories: (1) TWM is liable for contamination caused by its removal of underground storage tanks; and (2) TWM is the successor to Portland Waste, Conn–Val, and George West. *Id.* TWM moved for summary judgment arguing as a matter of law, it was not a successor to Portland Waste, Conn–Val or George West. *Id.* The court found Kleen had failed to establish TWM is the successor to Conn–Val and Portland Waste is linked to the site. *Id.* at 232. The court did find evidence linking George West to the site and denied summary judgment because a genuine

---

1. The last full paragraph of the original opinion appearing before the "Conclusion" has been de-
 leted.

issue of material fact exists as to whether TWM is liable as the successor to George West. *Id.* at 232–34.[2]

Prior to the court's resolution of the motion for summary judgment in the underlying action, TWM brought this action to "compel the Insurers to provide coverage pursuant to certain policies of insurance." Petition for Declaratory Judgment and Plea of Assumpsit ("Petition") at ¶ 1. TWM sought indemnity and a defense for TWM's own actions at the site, and its actions as the alleged successor to George West and Portland Waste. *See* Petition.

### B. The Policies Issued to TWM

Commercial Union issued a comprehensive general liability insurance policy to TWM (policy no. CBD 17 61 71) for a period commencing May 10, 1984, and ending May 10, 1985[3], and another policy to Portland Waste (policy no. CBD 18 02 58) for a period commencing May 21, 1984, and ending May 21, 1985. Affidavit of Kevin C. Devine ("Devine Affidavit") at ¶¶ 3, 4, Exhibit 1, 2; Petition at ¶¶ 13, 16.[4] The named insured on policy no. CBD 17 61 71 was Total Waste Management Corp., a Massachusetts corporation, whose offices were located in the Parade Mall, Portsmouth, New Hampshire. Devine Affidavit at ¶ 3, Exhibit 1, 3. TWM was not incorporated in New Hampshire until November 14, 1986, which was after the expiration of the Commercial Union policy to TWM. Devine Affidavit at ¶ 6, Exhibit 3. In response to an interrogatory requesting a description of "all corporate mergers, acquisitions, asset purchases, stock purchases and any other transaction by which [TWM] alleg-

es to have succeeded to or otherwise acquired the right to coverage under policy CB[D] 176171 issued by Commercial Union Insurance Company for the coverage period May 10, 1984 to May 10, 1985," TWM responded "None. The policy was issued to Total Waste Management Corporation." Devine Affidavit, Exhibit 5.

The Commercial Union policies set forth the following definition of persons insured:

### II. PERSONS INSURED.

Each of the following is an *insured* under this insurance to the extent set forth below:

(a) if the *named insured* is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor, and the spouse of the *named insured* with respect to the conduct of such a business;

(b) if the *named insured* is designated in the declarations as a partnership or joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such;

(c) if the *named insured* is designated in the declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such;

(d) any person (other than an employee of the *named insured* ) or organization while acting as real estate manager for the *named insured;* and

---

**2.** In July 1988, TWM purchased "certain assets of the waste oil collection and sales business of George West and Sons … within the States of Maine, New Hampshire and Vermont." Declaration of Christine E. Connelly, Exhibit 1 (Answers to Defendant Maine Bonding's Interrogatories) at 7. TWM did not use any of its shares to purchase the assets. *Id.* Although George West agreed not to engage in waste oil collection and sales in Maine, New Hampshire or Vermont, George West "continued its corporate existence after the asset sale." *Id.* George West and TWM also do not share any officers, directors, or shareholders. *Id.* at 8.

**3.** TWM states the policy was extended by binder through June 14, 1985. Plaintiff's Memorandum of Law in Opposition to Defendants Commercial Union's, National Union's, and INA's Motions for Summary Judgment at 4; *see also* Petition at ¶ 13.

**4.** TWM subsequently abandoned its claims for coverage under the Commercial Union policy issued to Portland Waste (policy no. CBD 18 02 58) because the court in the underlying action found Portland Waste was not linked to the site. Plaintiff's Memorandum of Law in Opposition to Defendants Commercial Union's, National Union's, and INA's Motions for Summary Judgment at 2 n. 1.

(e) [dealing named insured with respect to motor vehicles] ...

This insurance does not apply to *bodily injury* or *property damage* arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a *named insured.*

Devine Affidavit at ¶¶ 3, 4, Exhibits 1, 2. The Commercial Union policy issued to TWM also had an additional provision concerning automatic coverage for newly acquired organizations. Devine Affidavit at ¶ 3, Exhibit 1. Paragraph XII of the Commercial Union policy to TWM provides:

AUTOMATIC COVERAGE–NEWLY ACQUIRED ORGANIZATIONS (90 DAYS)

The word *insured* shall include as *named insured* any organization which is acquired or formed by the *named insured* and over which the *named insured* maintains ownership or majority interest, other than a joint venture, provided this insurance does not apply to *bodily injury, property damage, personal injury* or *advertising injury* with respect to which such new organization under this policy is also an *insured* under any other similar liability or indemnity policy or would be an *insured* under any such policy but for exhaustion of its limits of liability. The insurance afforded hereby shall terminate 90 days from the date any such organization is acquired or formed by the *named insured* ("after-acquired provision").

Devine Affidavit at ¶ 3, Exhibit 1.

National Union issued a comprehensive general liability policy to TWM (policy no. S9961963) for a period commencing June 14, 1985, and ending March 28, 1986, and another policy to Portland Waste (policy no. S9961964) commencing June 14, 1985, and ending May 28, 1986. Affidavit of Jean-Pierre D. Van Lent ("Van Lent Affidavit") at ¶¶ 5, 6, Exhibits C, D; Petition ¶¶ at 14, 17.[5] The named insured on policy no. S9961963 was Total Waste Management Corp., Parade Mall, Portsmouth, NH 03801. Van Lent Affidavit at ¶ 5, Exhibit C. The language used in the policy to identify the persons insured is identical to the language used in the Commercial Union policy to TWM. *See* Van Lent Affidavit, Exhibit D. The National Union policy to TWM also has an additional provision concerning automatic coverage for newly acquired organizations which is identical to the language in the Commercial Union policy to TWM. *See* Van Lent Affidavit at ¶¶ 5, 6, Exhibit C, D.

■ INA issued three general liability policies to TWM: the first (policy no. GLP GO 1285956) commencing March 10, 1981, and ending March 10, 1982; the second (policy no. GLP GO 3063446) commencing March 10, 1982, and ending March 10, 1983; and the third (policy no. GLP GO 4370922) commencing March 10, 1983, and ending March 10, 1984. Affidavit of Mark D. Hoerrner ("Hoerrner Affidavit") at ¶¶ 5, 6, 7, Exhibit 2, 3, 4; Petition at ¶ 15. Like Commercial Union's and National Union's policies to TWM, the named insured on INA's general liability policies was Total Waste Management Corp., Suite 25 Parade Mall, Portsmouth, NH 03801. Hoerrner Affidavit at ¶¶ 5, 6, 7, Exhibits 2, 3, 4. The policies' language is identical to the Commercial Union policy to TWM in defining the persons insured. Hoerrner Affidavit at ¶¶ 5, 6, 7, Exhibits 2, 3, 4. As submitted to the court, INA's policies do not contain an after-acquired provision. *See* Defendant Insurance Company of North America's Memorandum of Law in Reply to Plaintiff's Memorandum of Law in Opposition to Defendants Commercial Union's, National Union's and INA's Motions for Summary Judgment ("INA's Reply Memorandum") at 9; Hoerrner Affidavit at ¶¶ 5, 6, 7, Exhibits 2, 3, 4.[6]

---

**5.** TWM subsequently abandoned its claims for coverage under the National Union policy issued to Portland Waste (policy no. S9961964) because the court in the underlying action found Portland Waste was not linked to the site. Plaintiff's Memorandum of Law in Opposition to Defendants Commercial Union's, National Union's, and INA's Motions for Summary Judgment at 2 n. 1.

**6.** TWM states it does not have in its possession complete copies of the INA policies. TWM speculates the INA policies contain an after-acquired provision because "every page of the insuring agreements of the INA policies that TWM has obtained are identical to those of National Union and Commercial Union." Plaintiff's Memorandum of Law in Opposition to Defendants Com-

## C. The Policy Issued to George West

Unlike Commercial Union, National Union, or INA, Maine Bonding never issued a general liability policy to TWM nor is TWM listed on an endorsement adding TWM as an insured. Affidavit of Rein Keskula ("Keskula Affidavit") at ¶ 4. Maine Bonding did issue to George West a general liability insurance policy (policy no. GLA 58087) for a term ending June 22, 1984. Keskula Affidavit at ¶ 3, Exhibit 1; *see also* Petition at ¶ 18.[7] Therefore, TWM does not seek coverage for any policy Maine Bonding issued to TWM. Rather, TWM seeks coverage under a policy issued to George West.

### Discussion

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. *Rodriguez–Garcia v. Davila,* 904 F.2d 90, 94 (1st Cir.1990) (citing Fed.R.Civ.P. 56(c)). The burden is on the moving party to establish the lack of a genuine, material factual issue, *Finn v. Consolidated Rail Corp.,* 782 F.2d 13, 15 (1st Cir.1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. *Caputo v. Boston Edison Co.,* 924 F.2d 11, 13 (1st Cir.1991). Once the movant has made a properly supported motion for summary judgment, however, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)).[8]

### A. Commercial Union's, National Union's, and INA's Motions for Summary Judgment

■ Commercial Union asserts TWM of New Hampshire is not a person insured under policy no. CBD 17 61 71 and did not succeed to the interests of TWM of Massachusetts. It also asserts that even if TWM of New Hampshire did succeed to the interests of TWM of Massachusetts, no coverage is afforded to George West, an after-acquired non-insured entity, and TWM is not entitled to coverage for tank removal which occurred two years after the expiration of policy no. CBD 17 61 71. Memorandum of Law in Support of Commercial Union's Motion for Summary Judgment on Issue of Insured's Identity at 5. According to Commercial Union, it would be "outrageously preposterous" for the court to find that if TWM of New Hampshire is the successor to George West, then TWM of New Hampshire's "subsequent

---

mercial Union's, National Union's, and INA's Motions for Summary Judgment at 19 n. 7. TWM requests the court to treat the existence or nonexistence of the provision as a genuine issue of material fact. Conjecture is not sufficient evidence to create a material issue of fact for the trier. *Stone and Michaud Ins., Inc. v. Bank Five For Sav.,* 785 F.Supp. 1065, 1069 (D.N.H.1992). However, for purposes of this order, the court will assume INA's policies contain an after-acquired provision.

7. In the complaint, the plaintiff alleges the policy was issued to Portland Oil Recycling, Inc. Petition at ¶ 18. The named insured on the policy, however, is George West & Sons, Inc. Keskula Affidavit at ¶ 3, Exhibit 1. TWM admits George West is the "entity identified as the insured in the Certificate of Insurance dated May 2, 1984." Declaration of Christine E. Connelly, Exhibit 1 (Answers to Defendant Maine Bonding's Interrogatories) at 5.

8. None of the parties dispute that New Hampshire law should be applied to resolve these motions. *See* Memorandum of Law in Support of Commercial Union's Motion for Summary Judg-

ment on the Issue of Insured's Identity at 15–17; Memorandum of Law in Support of Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment at 15–16, 18; Memorandum of Law in Support of Defendant Insurance Company of North America's Motion for Summary Judgment on the Issue of the Identity of the Insured at 8–9; Defendant Maine Bonding & Casualty Company's Memorandum of Law in Support of Its Summary Judgment Motion at 7–9, 12 n. 8; Plaintiff's Memorandum of Law in Opposition to Defendants Commercial Union's, National Union's, and INA's Motions for Summary Judgment at 8–9, 13–15. The court will therefore apply New Hampshire law. *See Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.,* 7 F.3d 1047, 1048 n. 1 (1st Cir.1993). The court notes that TWM's memorandum in opposition to Maine Bonding and Casualty Company's motion for summary judgment is silent as to the law the court should apply. *See* Plaintiff's Memorandum of Law in Opposition to Defendant Maine Bonding & Casualty Company's Motion for Summary Judgment.

'acquisition' of [George West] somehow retroactively imbued it with coverage for liabilities incurred by George West during the [Commercial Union] policy periods, even though [George] West itself was not a 'Person Insured'" under policy no. CBD 17 61 71. *Id.* at 12.

National Union joined in the arguments made by Commercial Union concerning the "[i]ssue of the [i]nsured's [i]dentity." Defendant National Union Fire Insurance Company of Pittsburgh, PA's Joinder in Commercial Union Insurance Company's Motion for Summary Judgment. In its memorandum of law accompanying its motion for summary judgment, National Union argues policy no. S9961963 does not name George West as an insured, provide coverage to TWM for George West's acts, or provide coverage for TWM's own acts of tank removal at the site. Memorandum of Law in Support of Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment.

INA also joined in the arguments made by Commercial Union concerning the "[i]ssue of the [i]nsured's [i]dentity." Defendant Insurance Company of North America's Joinder in Commercial Union Insurance Company's Motion for Summary Judgment. It asserts summary judgment is appropriate because "(1) the entity [George West] allegedly responsible for any alleged pollution at the . . . site . . . is not insured under any policy INA issued to TWM; (2) the INA policies do not provide TWM with coverage for any liabilities of a non-insured entity which was acquired by TWM *after* the expiration of the INA policies; and (3) TWM had no involvement with the site until over three years after the expiration of the INA policies." Defendant Insurance Company of North America's Motion for Summary Judgment on the Issue of the Identity of the Insured.

For the purpose of resolving Commercial Union's, National Union's and INA's motions for summary judgment, the court need not resolve the issue as to whether the policies were issued to TWM of New Hampshire or of Massachusetts. The court will assume TWM of New Hampshire and TWM of Massachusetts are the same corporation and the Commercial Union, National Union, and INA policies were issued to that corporation. The issue presented is whether Commercial Union, National Union, and INA have an obligation under their policies to defend and indemnify TWM for liability arising from the pre-acquisition activities of George West, an after-acquired entity.

Courts have held an insurer is not required to provide coverage under its policy with a named insured for the activities of an entity which the named insured acquired after the expiration of the policy and which entity committed injurious acts prior to the expiration of the policy. *Johnson Controls, Inc. v. Employers Ins.*, No. 89–CV–016174, slip op. at 7–8 (Milwaukee County Circuit Court, December 22, 1992); *see also United Technologies Corp. v. Liberty Mut. Ins. Co.*, No. 87–7172, slip op. at 20 (Mass.Super.Ct. Aug. 3, 1993).[9] In *Johnson Controls, Inc.*, the plaintiff corporation ("JCI"), a manufacturer, designer, and installer of heating, ventilation, and air conditioning units, purchased Globe Union, a manufacturer of automotive batteries in 1978, and operated Globe Union as a subsidiary until 1980, when Globe Union was merged into JCI. *Id.* at 3, 8. JCI had purchased comprehensive general and excess insurance liability policies for terms between 1966 and 1978. *Id.* at 3. Globe Union was not a named insured under the policies and

---

**9.** The court agrees with TWM that *Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1077 (D.Idaho 1986) is distinguishable from the present case. In *Bunker Hill Co.*, the court found the insurer had no duty to defend or indemnify the acquiring company for acts of a merged entity. 647 F.Supp. at 1077–78. The insurer provided coverage to the acquiring company for a period between July 31, 1963, and May 9, 1968. *Id.* at 1077. The companies effectively merged on May 28, 1968, a date after the policy period expired. *Id.* In reaching its decision, the court found the acquiring company could not be held liable for the pre-merger activities of the acquired entity. *Id.* As a result, the insurer had no obligation to defend or indemnify an insured who could not be found liable. *Id.* at 1077–78. The court did not reach the issue of whether the after-acquired entity was an insured under the policies issued by the insurer. *Id.* at 1077. Unlike the acquiring company in *Bunker Hill Co.*, TWM might be held liable for the pre-acquisition activities of an acquired entity.

did not appear on any endorsements to the policies. *Id.* at 4. Under the terms of the policies, the insurers agreed to provide coverage for " 'all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury or property damage to which this insurance applies caused by an occurrence during the respective policy periods.' " *Id.* at 3–4. Many of the policies' " 'named insured' or 'additional insured' provisions include[d] JCI and its subsidiaries or affiliated companies 'as now or hereafter constituted.' " *Id.* at 6. JCI contended the "as now or hereafter constituted" clause modified both the named insured and the subsidiary or affiliated companies. *Id.* The *Johnson Controls, Inc.* court found the clause could only modify "the affiliated companies and/or subsidiaries language and obviously refers to the subsidiaries and/or affiliated companies which were in existence at the time the policies were issued." *Id.* at 7. The court noted that JCI's interpretation of the "as now or hereafter constituted" clause would "in effect, be declaring that all of [the] pre-merger policies not only cover damages by Globe Union, a company that had no legal or factual connection with JCI prior to 1978, but potentially damages caused by any company acquired by JCI until the end of time." *Id.* Allowing JCI to recover under its insurance policies for the acts of Globe Union would be unfair. *Id.* at 8.

In *United Technologies Corp.*, United Technologies Corporation ("UTC") sought indemnity under its comprehensive general liability policies and excess liability policies "not only for its own liabilities incurred during the policy period, but for pre-acquisition damage caused by activities of entities acquired by UTC only after the expiration of the policies." No. 87–7172, slip op. at 20. Under UTC's interpretation of the policies, "the insurers would be providing coverage to an entity which was not a named insured and which was a stranger to the policies and to UTC." *Id.* The policies had language similar to those found in *Johnson Controls, Inc. See id.* at 19, 20. The court found the plain language of the insurance policies did not provide coverage to UTC for the pre-acquisition activities of its after-acquired entities. *Id.* at 20. The court noted:

> [i]n the normal course of writing insurance, the underwriters assemble information about the risks from the agents, brokers and the insured and then decide whether they wish to insure the risk and if so at what premium. To extend coverage to pre-acquisition environmental problems would not be consistent with the underwriters' role.

*Id.* at 21.

Although it does not concern the acquisition of an entity and its liabilities, *Upjohn Co. v. Aetna Casualty & Sur. Co.*, No. 4:88–CV–124, 1991 WL 490026 (W.D.Mich. Sept. 9, 1991) is nonetheless instructive. *See United Technologies Corp.*, No. 87–7172, slip op. at 21–22. In *Upjohn Co.*, the plaintiff purchased two comprehensive general liability policies. 1991 WL 490026 at *1. During the effective dates of the policies but prior to any legal or factual involvement, connection or relationship to the sites by the plaintiff, third parties damaged the sites. *See id.* at *5, 6. After the expiration of the insurance policies, the plaintiff became involved or connected to the sites by allegedly dumping contaminated waste on several different sites, contracting to sell solvents to the owners of another site, purchasing a facility on another site, and becoming the owner of an additional site. *Id.* at *7–9. The court found an insurer was not required to provide coverage to the plaintiff for the damage caused by the third parties. *Id.* at *7. In reaching this decision, the court noted:

> To now hold [the insurer] responsible for not explicitly limiting its liability to property with which the insured has some sort of legal or factual connection during the years the policy was in effect would be unfair. I can see no way an insurance company could reasonably evaluate the risks of providing insurance coverage for property damage caused by someone other than its insured at a time when the insured neither has nor reasonably forsees [sic] any legal or factual relation to the property.

*Id.* at *5. The court also noted its holding furthered the goals of environmental statutes because

[r]estricting coverage to property with which the insured or its products has some sort of legal connection or involvement during the policy period encourages the prompt identification, limitation, and treatment of contaminated property. If entities could hold past insurers liable for their liability arising out of their subsequent, post-policy property purchases and waste disposal activities on property with which they had had no involvement during the policy period, there would be little incentive for [the insureds] to identify and pressure for the treatment of contamination prior to purchasing or engaging in activity which might subject them to liability.

*Id.* at *7.

TWM directs the court's attention to several California cases which it asserts have adopted a different view on the issue of whether an acquiring company has a right to coverage for pre-acquisition activities of the acquired entity. *See National Union Fire Ins. Co. v. Liberty Mut. Ins. Co.,* No. C–89–3973–DLJ, 1991 WL 527675, at *3–4, 1991 U.S.Dist. LEXIS 11350, at *10–11 (N.D.Cal. 1991); *In re Asbestos Ins. Coverage Cases,* Judicial Council Coord.Proceed. No. 1072, Phase IV Statement of Reasons for Decisions, slip op. at 3–5 (Cal.Super.Ct. San Francisco County, Jan. 24, 1990). In *National Union Fire Ins. Co.,* the court rejected the insurers arguments that "it would be absurd to find that the insurers insured [the acquiring company] against a product hazard of which they were not aware, and which did not arise until years after the policy expired" and such a finding would result in "windfalls

of undeserved insurance coverage for tortfeasor companies, merely through the act of merger." 1991 WL 527675 at *4, 1991 U.S.Dist. LEXIS 11350, at *10. The court found the insurers could have drafted their policies more carefully to limit their liabilities. *Id.* at *3–4, 1991 U.S.Dist. LEXIS 11350, at *10–11.[10]

In *In re Asbestos Ins. Coverage Cases,* the plaintiff sought coverage for the acts of an entity that was merged into the plaintiff after the expiration date of the policies but whose injurious acts occurred during the policies' periods. Judicial Council Coord.Proceed. No. 1072, Phase IV Statement of Reasons for Decisions, slip op. at 3–4. Applying California law, the court found the insurance policies provided coverage for bodily injury claims arising out of an acquired company's activities which occurred prior to acquisition. *Id.* at 4. To support this finding, the court referred to the language of the policies which provided coverage for "liability imposed upon the insured by law or assumed by the insured under contract or agreement" and the definition of the named insured as the acquiring company "and/or its subsidiary, associated, and affiliated companies or owned and controlled companies as now existing or hereafter constituted." *Id.*

The court does not agree with the reasoning, holdings, and vitality of the California cases cited by TWM. The court joins the *Johnson Controls, Inc.* court in criticizing the California courts' approach. *See Johnson Controls Inc.,* No. 89–CV–016174, slip op. at

---

10. In *National Union Fire Ins. Co.,* one of the policies issued to the plaintiff corporation defined the named insured as follows:

The O'Brien Corporation and Fuller O'Brien and C.I. Smith Company, Inc. and all subsidiary corporations or partnerships wholly owned by or in which the O'Brien Corporation acquires any ownership interest of at least 51% or which is under the operating management of the O'Brien Corporation as now exists or may hereafter be constituted.

*Id.* at *5, 1991 U.S.Dist. LEXIS 11350, at *13. The court found the "hereafter constituted" clause "show[ed] that [the insurer] did indeed anticipate coverage for entities acquired by, or coming under the control of O'Brien after the inception of the policy." *Id.* Another policy issued to the plaintiff corporation did not contain

a "hereafter constituted" clause and defined the name of the insured as follows:

The O'Brien Corporation, Fuller O'Brien Corp., Fuller O'Brien Sales Corporation, and any other entity while the Insured named owns more than [sic] 50% interest. This applies to domestic subsidiaries, only.

*Id.* at *5, 1991 U.S.Dist. LEXIS 11350, at *14. The court rejected the defendant insurer's argument that the term "owns" limits the temporal period of the policy because "owns" is present tense and not past or future tense. *Id.* The court found that if the insurer intended to limit coverage for subsidiaries which the plaintiff corporation did not own during the policy period, the insurer could have expressly provided this limitation in the policy. *Id.* at *5–6, 1991 U.S.Dist. LEXIS 11350, at *15.

10. In *Johnson Controls, Inc.*, the court stated:

> [t]o find here that the moving Defendants must respond by way of defense of an indemnification for [the acquiring company's] liabilities, arising out of occurrences at [the acquired company's] sites, when such liability antedates any legal or factual connection between [the acquiring company] and [the acquired company] is a 'brook too broad for leaping.' It completely violates the temporal aspects of the policy and does violence to the reasonable expectation doctrine.

*Id.* Indeed, the recent decision by the California Court of Appeals reversing in part *In re Asbestos Ins. Coverage Cases,* supports the reasoning that the policy must be examined from the perspective of the parties' reasonable expectations. *Armstrong World Indus., Inc. v. Aetna Casualty & Sur. Co.,* 25 Cal.App.4th 1316, 26 Cal.Rptr.2d 35 (1993). There, the court of appeals concluded that the policies did not provide coverage for the acts of the merged company prior to the merger. *Id.* at 75. Rejecting the trial court's view that the plain language of the insurance agreements especially the "hereafter constituted" clause provided coverage to the plaintiff, the court of appeals stated the insurance contract must be read as a whole and "in conjunction with the 'named insured' provision" and "with the policy period." *Id.* at 75, 76. While noting "in the abstract the phrase 'or hereafter constituted' could refer either to companies acquired at any time in perpetuity or to those acquired after the inception of the policy but before the end of the policy term," the court of appeals held the phrase "cannot reasonably be read as referring to any time in the indefinite future." *Id.* at 76. The court of appeals therefore held that "a corporate acquisition taking place after the policy has expired can have no retroactive effect on the identity of the named insured during the policy period." *Id.*

TWM's reliance on *National Union Fire Ins. Co.* also does not bolster their position.

As Commercial Union, National Union, and INA suggest, the precedential value of *National Union Fire Ins. Co.* is limited because, as a condition of settlement, the court's decision was vacated. Commercial Union Insurance Company's Supplemental Memorandum of Law In Response to Plaintiff's Objection to Defendants' Motions for Summary Judgment ("Commercial Union's Supplemental Memorandum") at 6; Defendant National Union Fire Insurance Company of Pittsburgh, PA's Reply Memorandum of Law in Response to Plaintiff's Objection to Defendants' Motions for Summary Judgment at 5; INA's Reply Memorandum at 5.[11] TWM therefore lacks persuasive authority to support its arguments.

From reading the plain language of the insurance policies, and in particular that portion entitled "II. PERSONS INSURED," the court finds George West is not an insured. *See United Technologies Corp.,* No. 87–7172, slip op. at 20. George West clearly does not fall within the definition of any of the five categories of a person insured as defined in the policy.

According to TWM, even if George West does not fall within any of the categories of an insured, it is entitled to coverage pursuant to Paragraph XII of the policies, the after-acquired provision. TWM contends that because Commercial Union, National Union, and INA inserted the after-acquired provisions in their policies, the parties "contemplated and intended to provide coverage for after-acquired entities" such as George West. Plaintiff's Memorandum of Law in Opposition to Defendants Commercial Union's, National Union's, and INA's Motions for Summary Judgment at 19.[12] According to TWM, neither the after-acquired provision nor the policy itself "restricts the operation of this section to the policy period." *Id.* at 20. To accept this view, however, creates a situation the courts in *Johnson Controls, Inc., Upjohn,* and *Armstrong World Indus.* criticized. *See Johnson Controls, Inc.,* No. 89–CV–016174,

---

**11.** TWM acknowledges *National Union Fire Ins. Co.* was vacated as a condition of settlement. Plaintiff's Memorandum of Law in Opposition to Defendants Commercial Union's, National Un-

ion's and INA's Motions for Summary Judgment at 10.

**12.** See n. 5, supra.

slip op. at 9–10; *Armstrong World Indus.*, 26 Cal.Rptr.2d at 76.

TWM's suggestion "completely violates the temporal aspects of the policy and does violence to the reasonable expectation doctrine." *See Johnson Controls, Inc.*, No. 89–CV–016174, slip op. at 10.[13] TWM's interpretation of the policies would mean that even though the policies had expired, any time TWM acquired an entity, the policies would spring back into effect for at least ninety days. As Commercial Union suggests, TWM's reading of the after-acquired clause "would extend [coverage] indefinitely for any acquisition [TWM] may make ten, one hundred, or even a thousand years from the expiration of the original policy period!" Commercial Union's Supplemental Memorandum at 9. TWM's interpretation contradicts the plain language of the effective dates of the policies and the reasonable expectations of the parties. *See Johnson Controls, Inc.*, No. 89–CV–016174, slip op. at 7.

■ The court finds the Commercial Union, National Union, and INA policies do not provide coverage for an entity which was acquired by the named insured after the expiration of the policies and which entity allegedly caused damage to the Kleen site during the policies' periods.[14]

### B. *Maine Bonding's Motion for Summary Judgment*

■ Maine Bonding asserts TWM is neither a named insured on the policy issued to George West, an insured of Maine Bonding as a result of TWM's purchase of assets from George West, nor an assignee of the George West policy. Defendant Maine Bonding & Casualty Company's Memorandum of Law in Support of its Summary Judgment Motion ("Maine Bonding's Memorandum"). TWM does not dispute it is not a named insured in the George West policy. *See* Plaintiff's Memorandum of Law in Opposition to Defendant Maine Bonding & Casualty Company's Motion for Summary Judgment. TWM contends summary judgment would be inappropriate, however, because if the court finds TWM is the successor to George West's liabilities in the underlying suit, TWM would also succeed to George West's rights including coverage under the policy issued by Maine Bonding. *Id.* at 2.

The court first addresses whether a transferee of assets is entitled to coverage under a transferor's insurance policy. In at least two situations, courts have found insurance coverage is transferred by operation of law. Applying state corporation law, several courts have found a surviving corporation in a merger transaction succeeds to the rights and benefits belonging to the merged corporation. *See, e.g., Imperial Enters., Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 292–93 (5th Cir.1976) (applying Georgia corporation law); *Brunswick Corp. v. St. Paul Fire and Marine Ins. Co.*, 509 F.Supp. 750, 752–53 (E.D.Pa.1981) (applying either Delaware, Maryland, or Pennsylvania corporation law); *Paxton & Vierling Steel Co. v. Great Am. Ins. Co.*, 497 F.Supp. 573, 575–78 (D.Neb. 1980) (applying Nebraska corporation law).[15]

---

**13.** In that case, the court agreed with the insurer that JCI's interpretation of the "hereafter" clause was "preposterous," and would ignore "the rest of the policy language, the inclusive dates of the policy, and most importantly, 'the objectively reasonable expectation of the parties at the time these pre-merger policies were issued.'" *Johnson Controls, Inc.*, No. 89–CV–016174, slip op. at 7.

**14.** TWM abandoned its claim for coverage under the Commercial Union, National Union, and INA policies for tank removal. Plaintiff's Memorandum of Law in Opposition to Defendants Commercial Union's, National Union's, and INA's Motions for Summary Judgment at 3 n. 4. While acknowledging it is not entitled to indemnification under any of the policies for its alleged negligence in removing the underground storage tanks, TWM asserts Commercial Union, National Union, and INA have an obligation to defend the negligence claim. *Id.* However, Commercial Union, National Union, and INA do not need to defend TWM for its negligence claim because an "insurer's duty to defend extends only to those causes of action that would fall under the policy if they were proved true." *White Mountain Constr. Co., Inc. v. Transamerica Ins. Co.*, 137 N.H. 478, 482, 631 A.2d 907, 909–10 (1993) (citing 14 M. Rhodes, Couch on Insurance 2d § 51:47, at 482 (rev. ed. 1982).

**15.** New Hampshire had a merger statute, N.H.Rev.Stat.Ann. § 293–A:77 (1987), similar to those mentioned in *Imperial Enters., Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 291 (5th Cir.1976); *Brunswick Corp. v. St. Paul Fire and Marine Ins. Co.*, 509 F.Supp. 750, 752 (E.D.Pa.

In product-line successor liability cases, courts have also found a successor corporation succeeds to the benefits or rights of the predecessor including the right to insurance coverage. In *Northern Ins. Co. v. Allied Mut. Ins. Co.*, 955 F.2d 1353, 1357 (9th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3033, 120 L.Ed.2d 903 (1992), the Ninth Circuit applied the rule of product-line successor liability. "Under this theory, a purchaser of substantially all assets of a firm assumes, with some limitations, the obligation for product liability claims arising from the selling firm's presale activities. Liability is transferred irrespective of any clauses to the contrary in the asset purchase agreement." *Id.* at 1357. In addition, the right to indemnity and to a defense under the insurance policies was also transferred. *Id.* at 1357–58.

According to Maine Bonding, "[a] mere purchase of certain assets of a company that continues in existence after the purchase is not sufficient for coverage to pass to the purchaser." Defendant Maine Bonding & Casualty Company's Reply Memorandum of Law in Support of its Summary Judgment Motion ("Maine Bonding's Reply Memorandum") at 2. It argues merger cases are inapplicable to this case because George West and TWM did not merge. *Id.* at 4–5. As support Maine Bonding directs the court's attention to TWM's answers to Maine Bonding's interrogatories. In these answers, TWM admitted it purchased "certain assets of the waste oil collection and sales business of George West and Sons ... within the States of Maine, New Hampshire and Vermont[,]" it did not use any of its shares to purchase George West's assets, George West

"continued its corporate existence after the asset sale[,]" and the corporations do not share any officers, directors, or shareholders. Declaration of Christine E. Connelly, Exhibit 1 (Answers to Defendant Maine Bonding's Interrogatories) at 7–8.

While George West and TWM may not have technically merged, the court found in the underlying action that TWM may be George West's successor. *See Kleen*, 817 F.Supp. at 234; *see also* 14 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 6780.66 (Supp.1993). A successor corporation is defined as "another corporation, which through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of [the] first corporation." *Unifirst Corp. v. Jeff Wyler Ford, Inc.*, No. CA92–08–079, 1993 WL 7875, at *3, 1993 Ohio App. LEXIS 143, at *7–8 (Ohio Ct.App., Clermont County January 19, 1993) *(per curiam )* (quotation omitted); *see also International Ass'n of Machinists, Local Lodge 954 v. Shawnee Indus., Inc.*, 224 F.Supp. 347, 351–52 (W.D.Okla.1963) (citing *In re New York S. & W. R. Co.*, 109 F.2d 988, 994 (3d Cir.), *cert. denied*, 310 U.S. 633, 60 S.Ct. 1075, 84 L.Ed. 1403 (1940)); *Bouchard v. People's Bank*, 219 Conn. 465, 594 A.2d 1, 4 (1991); Black's Law Dictionary 1431 (6th ed. 1990). Like a corporation succeeding to the rights of the merged corporation, a potential successor corporation by definition should also be entitled to those same rights. *See Unifirst Corp.*, No. CA92–08–079, 1993 WL 7875, at *3, 1993 Ohio App. LEXIS 143, at *7–8 (quoting Black's Law Dictionary 1288 (5th rev. ed. 1979).[16] *But see*

1981), and *Paxton & Vierling Steel Co. v. Great Am. Ins. Co.*, 497 F.Supp. 573, 575–76 (D.Neb. 1980). This statute provided in pertinent part:

> II. When a merger or consolidation has become effective: ... (d) The surviving or new corporation shall then and thereafter possess all the rights, privileges, immunities, and franchises, of a public as well as of a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and every other interest belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and

vested in the single corporation without further act or deed.

N.H.Rev.Stat.Ann. § 293–A:77. New Hampshire has recently updated its statute dealing with the effect of a merger. *See* N.H.Rev.Stat.Ann. § 293–A:11.06 (Supp.1993) (effective January 1, 1993).

16. In *Unifirst Corp.*, the plaintiff brought a contract action against the defendant, a purchaser of another corporation's assets. 1993 WL 7875, at *1–2, 1993 Ohio App. LEXIS 143, at *2–3. The plaintiff asserted the defendant was the seller corporation's successor. The defendant established through uncontested evidence that the transaction the defendant entered into with the seller was merely a purchase and sale of assets.

*EM Indus., Inc. v. Birmingham Fire Ins. Co.,* 141 A.D.2d 494, 529 N.Y.S.2d 121 (1988), *appeal denied,* 73 N.Y.2d 704, 537 N.Y.S.2d 492, 534 N.E.2d 330 (1989).[17]

Maine Bonding also attempts to distinguish the product-line successor liability doctrine from the present case. Maine Bonding first asserts the purchaser in *Northern Ins. Co.* purchased substantially all of the seller's assets. 955 F.2d at 1358. TWM did not allege that it purchased substantially all of George West's assets. Rather, TWM stated it purchased "certain assets of the waste oil collection and sales business of George West and Sons ... within the States of Maine, New Hampshire and Vermont." Declaration of Christine E. Connelly, Exhibit 1 (Answers to Defendant Maine Bonding's Interrogatories) at 7. Yet, as the court determined in the underlying action, "there is a genuine issue of material fact as to whether 'in substance, if not in form,' [TWM] is liable as the successor corporation to George West." *Kleen,* 817 F.Supp. at 234 (citing *United States v. Mexico Feed and Seed Co., Inc.,* 980 F.2d 478, 488 (8th Cir.1992)). In other words, a material issue of fact exists as to whether TWM's purchase of certain assets from George West is really the purchase of George West's entire business and as a result, TWM is a corporate successor to George West. *See id.* at 232–34.

Maine Bonding also attempts to distinguish *Northern Ins. Co.* from the underlying action because the underlying action does not involve product-line successor liability, but rather involves contamination of the site. Maine Bonding's Reply Memorandum at 6–7.

While agreeing that *Northern Ins. Co.* is a product-line successor liability case, the court finds the Ninth Circuit's reasoning is persuasive authority in deciding whether a potential corporate successor is entitled to coverage under its predecessor's insurance policy for a risk occurring before the transfer of assets.

■ The court next addresses Maine Bonding's claim that without an assignment, to which Maine Bonding consented, TWM is not entitled to coverage. The rationale for consent to assignment clauses is to protect insurers from unforeseen risks. *Northern Ins. Co.,* 955 F.2d at 1358; *see generally* 5A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 3425 (Buckley ed. 1970 & Supp.1992). "[A] provision limiting assignment in an insurance policy simply does not apply to a transfer occurring by operation of law." *Paxton & Vierling Steel Co.,* 497 F.Supp. at 581. Courts refuse to apply no assignment clauses to transfers occurring by operation of law because these "'transfers do not entail any increase in the risk or hazard assumed by the insurer.'" *Brunswick Corp.,* 509 F.Supp. at 753 (quoting *Imperial Enters., Inc.,* 535 F.2d at 291); *Paxton & Vierling Steel Co.,* 497 F.Supp. at 581. An insurer's risk does not increase where the loss or liability arose prior to the transfer. *See Northern Ins. Co.,* 955 F.2d at 1358; *see generally* 6A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 4269 (Buckley ed. 1979).

According to Maine Bonding, the insurance contract contains an assignment clause re-

*Id.* at *3, 1993 Ohio App. LEXIS 143, at *8. The defendant did not assume any of the seller's liabilities or obligations and did not purchase the seller's stock. *Id.* The seller and the defendant also did not share any common stockholders, directors, or officers. The *Unifirst Corp.* court affirmed the trial court's granting of the defendant's motion for summary judgment. *Id.* at *4, 1993 Ohio App. LEXIS 143, at *11. The court of appeals agreed the defendant met its burden of establishing that no genuine issue of material fact exists as to whether the defendant is the seller corporation's successor.

The court in the underlying action rejected the traditional *de facto* merger and mere continuation analysis of corporate succession, applied a "common sense rather than an overly restricted look at the corporate transfer," and found that

there was a material issue of genuine fact as to whether "in substance, if not in form, [TWM] is liable as the successor corporation to George West." *Kleen,* 817 F.Supp. at 233–34 (quotations omitted).

17. In *EM Indus., Inc. v. Birmingham Fire Ins. Co.,* 141 A.D.2d 494, 496, 529 N.Y.S.2d 121 (1988), *appeal denied,* 73 N.Y.2d 704, 537 N.Y.S.2d 492, 534 N.E.2d 330 (1989), an insurer who never insured the plaintiff did not become the plaintiff's insurance carrier "by virtue of [the] plaintiff's acquisition" of assets of another corporation. The court does not find this case persuasive. TWM may be the corporate successor to George West and not merely a purchaser of some assets.

quiring Maine Bonding's consent before any interest in the policy could be assigned to TWM. Maine Bonding's Reply Memorandum at 2 n. 1; Supplemental Affidavit of Rein Keskula at ¶ 5, Exhibit 1. Maine Bonding asserts this consent was not obtained and therefore TWM could not have obtained coverage. Defendant Maine Bonding & Casualty Company's Motion for Summary Judgment at 9. Maine Bonding argues "to provide coverage for an entity that was not a party to the contract would be to impose on Maine Bonding a degree of risk that it could not have contracted to, foreseen, or been compensated for when it issue[d] the policy" and would result "in free insurance coverage for TWM and increased costs to all insureds." *Id.* at 15.

■ Some of the damage or loss caused by George West to Kleen's property allegedly occurred during the term of Maine Bonding's policy and prior to George West's transfer of assets. Maine Bonding's risk is therefore no greater than when the policy "covers only the risk it evaluated when it wrote the policy." *Northern Ins. Co.,* 955 F.2d at 1358. If TWM is found to be the corporate successor to George West, Maine Bonding's liability on the insurance contract to George West would be limited to the terms and date of the policy. *See id.*

Maine Bonding further contends the doctrine of judicial estoppel bars TWM from asserting in the underlying action that TWM is not the corporate successor to George West and then asserting in this action that a material issue of fact exists as to whether TWM is a corporate successor to the rights of George West. Maine Bonding's Memorandum at 10 n. 6; Maine Bonding's Reply Memorandum at 3–4.

■ Judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (1st Cir.1987). Under this doctrine, " 'a party [who] assumes a certain position in a legal proceeding, and succeeds in maintaining this position … may not thereafter, simply because his interests have changed, assume a contrary position.' " *Wang Lab., Inc. v. Applied Computer Sci-*

*ences, Inc.,* 958 F.2d 355, 358 (Fed.Cir.1992) (quoting *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895)). Judicial estoppel is not applied unless "the inconsistent assertion in the subsequent litigation was adopted in some manner by the court in the prior litigation." *Stevens Technical Servs., Inc. v. SS Brooklyn,* 885 F.2d 584, 588 (9th Cir.1989). Courts employ judicial estoppel to prevent a litigant from "playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Patriot Cinemas, Inc.,* 834 F.2d at 212. (citation and quotation omitted.) In *Patriot Cinemas, Inc.,* the First Circuit recognized the doctrine and held that a litigant who represented in state court that it would not pursue a certain state law claim against the defendant was judicially estopped from pursuing a contradictory position in federal court against that same defendant. 834 F.2d at 212–215.

■ The application of the doctrine of judicial estoppel would not be appropriate to this case. Unlike the plaintiff in *Patriot Cinemas, Inc.,* TWM has not asserted a position in one action against Maine Bonding and then raised a contradictory position in another action against the same party. TWM is not "playing fast and loose with the courts" but rather is responding to the court's order in the underlying action that a material issue of fact exists as to whether TWM is George West's corporate successor. It merely is advancing an argument that if TWM is the corporate successor to George West's liabilities, TWM is also the corporate successor to George West's rights to insurance coverage.

*Conclusion*

For the foregoing reasons, the court grants INA's, Commercial Union's, and National Union's motions for summary judgment (document nos. 41, 43, and 44 respectively) and denies Maine Bonding's motion for summary judgment (document no. 45).

SO ORDERED.